Trustees, Middle River Sanatorium, and others, Appellants, vs. Industrial Commission and another, Respondents.

*March 12—April 7, 1937.*

For the appellants there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Kenneth Grubb* and *Arthur Larson* of counsel, all of Milwaukee, and oral argument by *Mr. Grubb.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent Bertha Forness there was a brief by *Cadigan & Cadigan* of Superior, and oral argument by *Charles P. Cadigan.*

NELSON, J.   The sole question argued on this appeal is whether the applicant filed her application for compensation

within two years from the date when she knew or ought to have known the nature of her disability and its relation to her employment. Sec. 102.12, Stats. 1933, provides:

". . . Regardless of whether notice was received, if no payment of compensation (other than medical treatment or burial expense) is made, and no application filed with the commission within two years from the date of the injury or death, or from the date the employee or his dependent knew or ought to have known the nature of the disability and its relation to the employment, the right to compensation therefor shall be barred."

The question presented requires a statement of the relevant facts. In 1930, the applicant entered the employ of the sanatorium as a floor maid. At that time she was eighteen years of age and well and healthy. Her duties as floor maid consisted among other things of serving meals to twenty-two to twenty-five bedridden tubercular patients. She carried trays from the food elevator to the patients, and often assisted some of the patients in eating, who were too ill to feed themselves. After serving breakfast to the patients on the third floor she swept and mopped the floors of the patients' rooms and the hall on that floor. She picked up the sputum bags and carried them to the incinerator. She dusted the beds, cleaned the bathrooms, and performed other work not necessary to describe. While thus working she was concededly exposed to tuberculosis. She continued at that work until August, 1931, when she started to work in the kitchen as a kitchen maid. Her duties as a kitchen maid required her to start work at about 6 o'clock in the morning. She set up the patients' trays and put food on them. She alternated with other maids in taking the trays upstairs on the thermotainer. When she got upstairs she served the food and delivered the trays to the floor maids who carried them to the patients. While so employed, she now and then went into the patients' rooms and occasionally assisted them in eating. She per-

formed similar services in preparing the dinners and suppers. She continued her work as a kitchen maid until May, 1933, when she was transferred to the girls' dormitory, where she was employed as a cleaning maid. She quit her employment in June, 1933, because she was not well enough to carry on, and because of certain complaints regarding her work which she knew were justified. She went to live with a sister whom she assisted in taking care of her children and in doing the housework. She was examined by Dr. Wall early in July, 1934, who found that she was suffering from tuberculosis. Shortly thereafter, on August 17, 1934, she filed her application for compensation.

The plaintiffs earnestly contend that in March or April, 1932, the applicant knew the nature of her disability and its relation to her employment, and that her claim for compensation when filed on August 17, 1934, was barred. Sec. 102.12, *supra*. The examiner found that the applicant filed her application within two years from the date she knew the nature of her disability and its relation to her employment. That finding is particularly assailed as not supported by the evidence.

The applicant testified that, commencing about Christmas time in 1931, or shortly thereafter, she suffered considerable pain in her right chest; that she consulted Dr. Johnson, the medical director in charge of the sanatorium; that he diagnosed her ailment as pleurisy and so advised her; that he recommended that she rub her chest with analgesic balm; that she continued to work; that in March or April, her condition became more acute, and she again consulted Dr. Johnson who examined her again and told her that she was suffering from pleurisy; that she did not again consult Dr. Johnson or any other doctor connected with the sanatorium; that some time in 1932, her chest was X-rayed, and she was told by Mrs. McCartney, a trained nurse and the superintendent of the

sanatorium, that the X-ray picture showed a pleurisy shadow; that on June 15, 1933, the day she left the sanatorium her chest was again X-rayed; that about two weeks thereafter she had a coughing spell and at that time raised blood; that she thereupon went to the sanatorium and asked Mrs. Mc-Cartney how the X ray had turned out, and that at that time Mrs. McCartney told her it was just fine, that the pleurisy shadow had cleared up and that the X ray was all right; that she did not know that she was suffering from tuberculosis until Dr. Wall examined her and so informed her early in July, 1934.

It seems very clear from this testimony that she did not suspect, much less know, before 1934, the nature of her disability and its relation to her employment, that is to say, that she was afflicted with an occupational disease.

The plaintiffs, however, contend that the following questions and answers clearly reveal that she did know, or ought to have known, in March or April, 1932, the nature of her disability and its relation to her employment:

"*Q.* When you were suffering from what you call pleurisy at the time Dr. Johnson treated you and at the time you were disabled for a week in March or April, 1932, did you think at that time that that condition might have come from your employment? . . . *A.* Yes, I did.

"*Q.* You thought at that time that the pleurisy from which you were suffering was due to the contact you had with patients here at the sanatorium? *A.* I thought it was due to the work in the kitchen.

"*Q.* What part of your work did you think it was due to? *A.* Well, being in the icebox, dishing up ice cream on warm days, and then being in the steam room washing dishes and wiping them.

"*Q.* You thought it was from your exposure to heat and cold? *A.* Yes and the steam.

"*Q.* Did you think your contact with patients had anything to do with that pleurisy? *A.* Yes, *I think* it had something to do with it.

"*Q.* What did you think that had to do with that condition of pleurisy? *A.* Well, *I think* it weakened my lungs.

"*Q.* In what way was that brought about? *A.* Just from the general contact with patients.

"*Q.* How would contact with patients weaken your lungs? *A.* Well, I couldn't definitely say that coming in contact with the patients had anything to do with my pleurisy. I couldn't say just what did cause my pleurisy.

"*Q.* Well, outside of this exposure to heat and cold that you have told us about, you said you thought your employment had something to do with that pleurisy, and you mentioned being exposed to heat and cold, and you thought it might have had something to do with it, and then you also mentioned something about your contact with patients that may have had something to do with it. *A.* Well, I thought coming in contact with positive patients may have a tendency in weakening a person's lungs in time."

The plaintiffs contend that this testimony impels the finding that the applicant knew, or ought to have known, prior to two years before August 17, 1934, the nature of her disability and its relation to her employment, as was held in *Harnischfeger Corp. v. Industrial Comm.* 220 Wis. 386, 389, 265 N. W. 215. It was there said:

"It [the finding of the commission] concedes that he 'thought' that this employment was causing him disability. *If he so thought, he must be held to have known 'the nature of his disability and its relation to his employment.'*"

The sentence italicized, removed from its context and dissociated from the undisputed facts there considered (which so clearly showed that the applicant knew the nature of his disability and its relation to his employment), tends to support the plaintiffs' contention. But that sentence, considered alone, does not correctly state the law. What an employee may think as to the nature of his disability and its relation to his employment is not alone sufficient to start the running of the two-year statute of limitations. To so hold would be to

adopt an unthinkably harsh rule. What an employee thinks must be based on something more than suspicion and conjecture in order to start the running of the statute of limitations. Such thought must be based upon knowledge of, or upon reliable information regarding the nature of his disability and its relation to his employment. It is, of course, not necessary that the employee know the precise name employed by the medical profession to describe his disability, but he must have knowledge or an appreciation of the nature of his disability and its relation to his employment.

Of course, the applicant knew in March or April of 1932 that she was suffering from pleurisy, but there is nothing tending to show that she knew that pleurisy is a symptom of tuberculosis. It appears also that she thought the pleurisy might have been caused by her exposure to alternate heat and steam and cold, or by contacting tubercular patients which tended in time to weaken her lungs. A careful consideration of her testimony hereinbefore recited warrants the conclusion that much of it expressed her thoughts at the time of the hearing rather than to the thoughts which she had in March or April, 1932. Several of her answers so indicate. That conclusion is further supported by other testimony given by her, the substance of which is that it was only after consulting Dr. Wall and being informed of her condition that she first thought the tuberculosis from which she was suffering was traceable back to the time she worked at the sanatorium. There is no testimony that she knew, thought, or even suspected, while employed at the sanatorium, that she had tuberculosis or that her lungs were diseased. When she experienced pain in her chest she did the very natural thing of consulting Dr. Johnson, the head physician of the sanatorium, an institution devoted to the treatment of tubercular patients. He told her that she had pleurisy and recommended certain treatment for such ailment. Had she suspected or

known that her lungs were affected she certainly would not have continued to work for fourteen or fifteen months at the sanatorium without again consulting Dr. Johnson or some physician connected with the sanatorium. Had Dr. Johnson suspected tuberculosis he would not have treated her for pleurisy and permitted her to continue her work. She obviously believed what she was told by Dr. Johnson and by Mrs. McCartney.

In our opinion, the compensation law does not put upon an employee the duty of knowing the nature of his disability and its relation to his employment before those things are reasonably ascertainable by the medical profession. Had Dr. Johnson told her in 1932 that her lungs were affected, a different situation would be presented.

*By the Court.*—Judgment affirmed.