CREAMERY PACKAGE MANUFACTURING COMPANY and another, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*October 15, 1937—January 11, 1938.*

For the appellants there was a brief by *Otjen & Otjen* of Milwaukee, and oral argument by *C. J. Otjen.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

NELSON, J.   The plaintiffs seek to set aside an award to Herman Meyer, hereinafter called the "applicant," and also an interlocutory order by which the commission reserved the right to determine "liability for compensation and medical treatment subsequent to July 2d, 1936."   Although the applicant accidentally sustained a left inguinal hernia on December 12, 1930, while performing services growing out of and incidental to his employment, he did not apply for compensation therefor until January 8, 1936.   He was paid no compensation for such injury, other than medical treatment, and apparently sustained no wage loss as a result thereof until on or about November 16, 1935.

The question for determination is whether the claim is barred, by virtue of sec. 102.12, Stats. 1929.   Stated more specifically: Did the applicant file an application for compensation with the Industrial Commission, within two years from the date of injury or from the date he knew or ought to have known *"the nature of the disability and its relation to the employment?"*   The plaintiffs assert that the applicant did know or ought to have known the nature of his disability and its relation to his employment.   The applicant and the commission assert the contrary.   If the plaintiff's assertion is correct, and if there is no basis in the evidence for the conclusion that the applicant did not know or ought not to have known the nature of the disability and its relation to

the employment until within the two years immediately preceding the filing of his application for compensation, then his right to compensation is wholly barred. Sec. 102.12, *supra*.

In order that this controversy may be understood it is necessary that the facts, as to which there is no dispute, be stated. On December 12, 1930, the applicant was employed by Creamery Package Manufacturing Company. Both were subject to the compensation act. The applicant testified that while assisting in lifting a flask which weighed eight hundred to one thousand pounds, he experienced great pain in his left inguinal region. He could no longer shove or walk. He held his hand in the air and the boss said to him, "What is the matter, Herman?" The applicant replied: "I got awful pain. Something tore, it must have been a rupture." Thereafter, as he weakly walked toward the cupola room "it shot down more." The boss told him to hurry up and go to the doctor. He reached the cupola room with difficulty, and there talked to the foreman. He said that he had to leave to go home, that he had to go to a doctor. He exhibited the swelling or protrusion to the foreman. It was as large as a goose egg. His son took him to the doctor's office. Whether he was taken home first does not clearly appear, although the applicant testified that at the steps of his home his son carried him up the stairs because he was in such pain that he "couldn't raise that left foot good." He told the doctor that he "got it lifting." The doctor reduced the hernia and fitted him with a truss. He then walked home, but did not work that day because he felt weak. He resumed work the following day. He experienced pain when lifting, and the rupture at times was not held in place by the truss. He had "to fix it up seven or eight times a day." For several months after he went back to work the rupture was "just like a goose egg." He continued to do his regular work until July 15, 1931, when he was overcome by

the heat. He was paid compensation to August 1, 1931, when he returned to work. He continued to work until September 13, 1934, when he sustained an injury to his ribs as a result of a fall. He was paid compensation for that injury up to October 8, 1934. On October 8, 1934, he developed an intercostal neuralgia. He remained away from his work until November 18th. He collected a certain amount for that illness from the Ætna Insurance Company, under a health and accident policy issued to him. Following that illness he suffered from an attack of influenza and coronary sclerosis, from November 18 to January 1, 1935, and was again paid sick benefits by the Ætna Insurance Company. He returned to work on January 2, 1935, and continued to work until November 16, 1935, when he again claimed sick benefits from the Ætna Insurance Company, for "pleurisy left side." He was paid benefits from November 12, 1935, to December 10, 1935. On January 4, 1936, he filed an application for compensation with the commission. The examiners who heard the evidence found that he—

"did suffer injury growing out of his employment, resulting in a left inguinal hernia on December 12, 1930; that he was immediately disabled as a result of said injury; that he knew the nature of his disability and its relation to his employment at that time; that no compensation was paid; that no application was filed with the Industrial Commission within two years from the date of the injury, and that therefore his claim is barred by section 102.12 of the Statutes of Wisconsin."

The examiners thereupon dismissed the application. The applicant petitioned the commission for a review. The commission granted the review, set aside the findings of fact and order of the examiners, and made and filed its findings of fact which in part are as follows:

"That on December 12, 1930, . . . while performing service growing out of and incidental to his employment and arising out of such employment applicant sustained injury in

the nature of a left inguinal hernia; that he reported the injury immediately, was immediately disabled, returned to work the following day, and suffered no further disability by reason of his hernia until November 16, 1935; that on November 16, 1935, he became totally disabled by reason of his hernia and remained totally disabled on account of his hernia to a degree resulting in fifty per cent loss of wage from that date to the date of hearing on July 2, 1936; . . . that applicant did not know nor ought he to have known the nature of his disability and its relation to his employment until disability resulted on November 16, 1935; that prior to that time applicant's condition was not such as to cause disability except for the remainder of the day upon which his injury was sustained; . . . that applicant filed application for hearing on January 8, 1936, less than two years from the date when he knew or ought to have known the nature of his disability and its relation to his employment."

The commission thereupon ordered the plaintiffs to pay the compensation which had become due up to July 2, 1936, and reserved the right to pass upon liability for compensation and medical treatment following that date. The circuit court affirmed the award and order.

The facts undisputably show that the injury which the applicant sustained on December 12, 1930, was the result of an industrial accident. The injury concededly did not result from an occupational disease. That the applicant knew the nature of his injury immediately upon its happening there cannot be the slightest doubt. He experienced severe pain while lifting. He felt something tear. He was immediately conscious of the hernia protrusion. He told his foreman within a few moments that he was ruptured. He exhibited the goose-egg protrusion to him. He was taken to a doctor, who told him that he was ruptured. He was fitted with a truss. The truss did not satisfactorily hold the rupture. While working he was compelled to push it back seven or eight times a day. These undisputed facts cannot be the basis for a finding that the applicant did not know or ought

not to have known the nature of the disability and its relation to his employment, and it was beyond the jurisdiction of the commission to so find. In the finding that no *disability* resulted until November 16, 1935, the commission, apparently applied, to this purely industrial-accident case, the rules which properly are applicable to occupational-disease cases, or to those exceptional cases in which compensation has been awarded for total blindness, which did not result immediately from accidental injury to an eye, but from a condition caused by injury which was akin to or in the nature of a slowly developing disease, which ultimately caused blindness. The law applicable to controversies including occupational diseases, and to blindness caused by a disease of the eye following some injury, do not rule this controversy.

The Workmen's Compensation Act as originally enacted did not apply to occupational diseases. In 1919, the legislature enacted ch. 668, which simply provided that "the provisions of sections 2394—1 to 2394—31, both inclusive, are extended so as to include, in addition to accidental injuries, all other injuries, *including occupational diseases,* growing out of and incidental to the employment."

Extending the law to include occupational diseases by so limited an enactment, gave rise to many perplexing questions. *Schaefer & Co. v. Industrial Comm.* 185 Wis. 317, 201 N. W. 396; *Employers Mut. L. Ins. Co. v. McCormick,* 195 Wis. 410, 217 N. W. 738; *Zurich Gen. Acc. & L. Ins. Co. v. Industrial Comm.* 203 Wis. 135, 233 N. W. 772. In order that those suffering from occupational diseases might not lose the benefit of the compensation act, it was held that the time of accident in occupational-disease cases was the time when the disability first occurred, and that disability in an occupational-disease case does not occur until there is a wage loss. *Wisconsin Granite Co. v. Industrial*

*Comm.* 208 Wis. 270, 242 N. W. 191; *Michigan Quartz Silica Co. v. Industrial Comm.* 214 Wis. 289, 252 N. W. 682; *North End Foundry Co. v. Industrial Comm.* 217 Wis. 363, 258 N. W. 439; *Motor Castings Co. v. Industrial Comm.* 219 Wis. 204, 262 N. W. 577; *Odanah Iron Co. v. Industrial Comm., ante,* p. 20, 275 N. W. 634. In occupational-disease cases there is often a real basis for a finding that the applicant did not know or ought not to have known the nature of his disability or its relation to his employment. *Trustees, M. R. Sanatorium v. Industrial Comm.* 224 Wis. 536, 272 N. W. 483, 486. It was there said (p. 543) :

"In our opinion, the compensation law does not put upon an employee the duty of knowing the nature of his disability and its relation to his employment before those things are reasonably ascertainable by the medical profession."

. In that case the applicant, although working in a tuberculosis sanatorium and although ill, was told by one of the doctors employed at the sanatorium that she was suffering from pleurisy. She did not know at the time, and was not told by the doctor, that pleurisy might be a symptom of tuberculosis.

In certain cases, involving claims for compensation for the loss of an eye, it is held that the nature of the disability cannot be known until total blindness results. *Acme Body Works v. Industrial Comm.* 204 Wis. 493, 234 N. W. 756, 236 N. W. 378; *Nelson v. Industrial Comm.* 217 Wis. 452, 259 N. W. 253. That is obviously good law where claim is made for the loss of an eye. To require an applicant to make claim for the loss of an eye within two years from the time that he has suffered some traumatic injury to it, having no reasonable ground for then believing that a cataract will result from a comparatively minor injury, which will ultimately cause total blindness, would be unjust and unsound. A cataract resulting from a traumatic injury is in the nature

of a disease, and it was so considered by the court in *Acme Body Works v. Industrial Comm., supra.* It was there said, in discussing the facts of that case (p. 497) :

"The cause and origin of disease is often obscure and elusive."

In applying the provisions of sec. 102.12 to claims for compensation, the distinction between industrial-accident cases and occupational-disease cases should be kept in mind. As was said in *North End Foundry Co. v. Industrial Comm., supra* (p. 370) :

"As has been said in previous opinions, occupational disease has a slow insidious approach, and in that respect differs widely from an accident, the happening of which can be fixed."

In *Larson v. Industrial Comm.* 224 Wis. 294, 297, 271 N. W. 835, 836, it was said, concerning the provisions of sec. 102.12 :

"These provisions were intended to cover cases where there might be some factual basis for ignorance of the character of the disability, and its causal relation to the work in which applicant was engaged. In nearly every accident case this will immediately be apparent, and the provision was directed primarily to cases of industrial disease where it was factually possible for some time after the onset of the disease for the applicant to be in doubt or ignorant, (1) as to what the disease was, and (2), whether it had in fact any relation to his employment."

There is no factual basis for the conclusion that the applicant did not know on December 12, 1930, the nature of his disability or that he did not know its relation to his employment.

Even applying to the present facts the rule stated in *Acme Body Works v. Industrial Comm., supra,* to wit (p. 498) : " 'The date of such an injury [to an eye] is not the time of the accident or occurrence causing injury, but the time . . .

when the right to compensation accrues,' " we reach the same conclusion. On December 12, 1930, upon the happening of the accident, the applicant was obviously entitled to compensation, not for loss of wages, since he resumed work the following day, but to compensation for "medical, surgical and hospital treatment" and "artificial members and appliances." The furnishing of such was specifically within the term "compensation." Sec. 102.09, Stats. 1929. So, no matter how the present case is viewed, the right to compensation was barred by virtue of sec. 102.12.

*By the Court.*—Judgment reversed, and cause remanded with directions to set aside the orders of the Industrial Commission.