CARMELA FURFERI, SUBSTITUTED IN THE PLACE AND STEAD OF DOMINICK FURFERI, PETITIONER-APPELLANT, v. THE PENNSYLVANIA RAILROAD COMPANY, DEFENDANT-RESPONDENT.

Submitted October 30, 1936—Decided January 22, 1937.

For the appellant, *Felcone & Felcone* (*Michael Felcone,* of counsel).

For the respondent, *W. Holl Apgar.*

The opinion of the court was delivered by

HEHER, J. This is a proceeding under the Workmen's Compensation act. *Pamph. L.* 1911, *pp.* 134, 763, as amended. The deputy commissioner found that the employe had suffered, by accident arising out of and in the course of his employment with the respondent, a fatal accidental "aggravation" of a conceded pre-existing inguinal hernia; and the Mercer Common Pleas affirmed the consequent judgment.

The evidence adduced by petitioner tended to prove that on August 15th, 1933, the deceased, while engaged with fellow-workmen in lifting railroad ties from the floor of a car over its side, three and a half feet high, to the right of way, sustained a strain which resulted in the strangulation of the contents of an existing hernial sac. The examining physicians found "a mass down on the right side, a hernia." The surgeon who performed an operation three days later found "a right inguinal strangulated hernia containing omentum and intestine." The intestine was "gangrenous and perforated;" and there were "a lot of adhesions between the hernial sac and the omentum and the hernial sac and the intestines." It was the undisputed medical opinion that the deceased had had a right inguinal hernia "for years;" there were unmistakable symptoms that it was of long standing. And the operating surgeon testified, and the conclusion was not seriously disputed, that the "hernia had been aggravated by the lifting of the ties," and that the "incarceration" and strangulation were the direct consequences.

The Supreme Court ruled as a matter of law that, for failure of proof of the elements of accidental hernia prescribed in paragraph 11 (x) of the Compensation act, as amended by chapter 279 of the laws of 1931 (*Pamph. L., p.* 704), the fatality was non-compensable. It was observed that a contrary construction would render the statute "largely meaning-

less, because a hernia non-compensable at its occurrence, becomes compensable on its re-occurrence."

But this reasoning does not take into account the essential difference between the occurrence of a hernia, no matter how it originated, and the traumatic aggravation of that bodily infirmity. It rejects, as inapplicable by reason of the last cited statute, the well-established principle that disability and death, directly attributable to the aggravation of pre-existing disease by accident arising out of and in the course of the workman's employment, are compensable. In *Winter* v. *Atkinson-Frizelle Co.*, 88 *N. J. L.* 401, this court sustained an award to the dependents of a workman whose death resulted from the effects of an unusual strain upon a diseased heart. The like ruling was made in *Bernstein Furniture Co.* v. *Kelly*, 114 *N. J. L.* 500. And in *Graves* v. *Burns, Lane & Richardson*, 10 *N. J. Mis. R.* 667; *affirmed,* 110 *N. J. L.* 607, this court held that tuberculosis ensuing from the activity of dormant bacteria induced by extraordinary strain is compensable. Such was also the holding of this court in *Lundy* v. *George Brown & Co.*, 93 *Id.* 469. This principle was applied where a latent venereal disease and its resultants were rendered active by accident; it was held that there was an accidental injury in the legal sense. *New York Live Poultry Trucking Co.* v. *Schwartz*, 5 *N. J. Mis. R.* 178; *affirmed,* 104 *N. J. L.* 180. And in *New York Switch and Crossing Co.* v. *Mullenbach*, 92 *Id.* 254, where there was an aggravation of two herniæ as the result of strain suffered in lifting a steel girder, and the workman died of post-operative pneumonia, this court held that his death ensued from an accident arising out of and in the course of the employment. See, also, *Geisel* v. *Regina Co.*, 96 *Id.* 31; *affirmed,* 97 *Id.* 331.

We proceed to a consideration of the statute. We perceive in its general scheme and the language employed to express the legislative purpose recognition of the distinction between the hernia itself and the consequences of intervening trauma, direct and indirect, upon the affected part, and to deal only with the former. Proceeding upon the assumption, grounded in medico-surgical experience, that inguinal hernia is ordinarily a disease which "develops gradually," and is "very

rarely the result of an accident," it classifies as compensable a "real traumatic hernia resulting from the application of force directly to the abdominal wall, either puncturing or tearing the wall;" and it then goes on to provide that "all other cases will be considered as either congenital or [of] slow development and not compensable, being a disease rather than an accidental injury, unless conclusive proof is offered that the hernia was immediately caused by such sudden effort or severe strain that, first the descent of the hernia immediately followed the cause; second, that there was severe pain in the hernial region; third, that there was such prostration that the employe was compelled to cease work immediately; fourth, that the above facts were of such severity that the same was noticed by the claimant and communicated to the employer within twenty-four hours after the occurrence of the hernia  *  *  *; fifth, that there was such physical distress that the attendance of a licensed physician was required within twenty-four hours after the occurrence of the hernia."

Thus is evinced a purpose to classify as compensable a hernia in its origin traumatic in the broad, general sense, and to exclude the hernia which is the culmination of a congenital or after-acquired physical weakness, classable as a disease, by setting up a standard of proof of hernia of the former class.   It is fundamental in the statute that an inguinal hernia resulting from an accident is compensable, even though the employe has the weakness of body structure predisposing to that condition.   But, in the absence of the elements of proof laid down in the statute, the hernia is considered the emanation of disease solely; it is in no sense classed as a non-compensable traumatic or accidental hernia. In the case of a hernia that does not meet the statutory standard of proof, the classification is non-traumatic—a disease unassociated with accident—and it is therefore non-compensable.   The limitation of this provision to herniæ of the inguinal type, effected by the amendment of 1931, is also significant of this design.

And so, the accidental aggravation of an existing hernia is compensable if the proof brings it within that category.

There is an obvious difference between the symptoms of the occurrence of a hernia and the traumatic strangulation of the intestinal or other contents of the hernial sac. When strangulation ensues from the application of intra-abdominal force flowing from unusual effort and over-exertion, there is an accident in the statutory sense; and there is a definite relation between the accidental injury and the consequences of the strangulation. In the Annals of Surgery, 1929, Dr. Coley defines "traumatic hernia" as one "resulting from the direct application of force to that portion of the abdominal wall at which the hernia appears, or a hernia resulting from the indirect application of force causing greatly increased intra-abdominal pressure; whether the hernia follows the natural openings in the abdomen or not, or creates a new passageway, is immaterial."

Manifestly, the deceased could not have met the requirements of this statute, for the hernia did not follow but long preceded the accident made the basis of the claim for compensation. His dependents are not seeking compensation for the hernia, but for his death directly traceable to the accidental aggravation of the pre-existing diseased condition of body. There was in point of fact no recurrence. There could not be, unless the hernia had been cured by a reconstructive operation termed the "radical treatment" of that condition. Palliatives ease but do not cure. The object of this operative treatment is the extirpation of the hernia by the elimination of the hernial sac and the strengthening of the weakened abdominal wall. There is recognition of this in the statute which points with certainty to the legislative intention. It is provided that, where the proof of traumatic hernia meets the standard therein laid down, "the provisions of paragraphs thirteen, fourteen and eleven (a) shall apply, until such time as the employe is able to resume some kind of work with the aid of a truss or other mechanical appliance;" and that if the employe "refuses to permit of an operation, the employer shall meet the requirements above specified, pay the reasonable costs of the truss or other appliance found necessary, and also pay compensation for twenty weeks, following which the obli-

gation shall cease and terminate, unless death results from the hernia, in which case the provisions of paragraph twelve shall apply."

In the event of the employe so afflicted consenting to undergo an operation by a physician selected by the employer, the latter shall defray the expenses of the operation and recovery, not to exceed a specified sum, and shall pay the compensation prescribed by paragraph 11 (a) "during the period of disability prior to and following the operation, subject to the provisions of paragraph thirteen." A refusal by the employe to accept the services of the physician selected by the employer relieves the latter of the "obligations concerning medical expense due to the operation and recovery," but not of the duty to pay compensation "during the prior and resulting periods of disability." If death ensues from "the hernia or operation," the provisions of paragraph 12 are applicable.

These provisions, taken as a whole, demonstrate the legislative meaning of the term "hernia." In the medico-chirurgical sense, hernia is a rupture; it is a protrusion of an organ or part thereof, or tissue or other structure, through the wall of the cavity normally containing it. An inguinal hernia is one which passes through the abdominal wall in the inguinal region. A hernia of the abdomen consists of a sac and its contents. The sac is formed of peritoneum; and the content is made up of the organ or part protruding from the abdominal cavity into the sac. *Maloy's Legal Anatomy and Surgery,* 571; *Stedman's Medical Dictionary* (*8th ed.*); 11 *Encyclopædia Brittannica* (*14th ed.*) 507. Such is also the medicolegal significance of the expression.

Strangulation, the proofs disclose, is the constriction of the contents of the hernial sac, or a portion thereof, in such a manner as to effect a stoppage of blood circulation in that part; it is quickly followed, if the condition is not remedied, by decay and mortification of the affected part. Concededly, this workman's death was caused by strangulation and the supervening gangrenous condition of the intestinal content of the hernial sac; and if extraordinary strain resulting from the lifting of the ties was the causative agent of the strangu-

lation, the fatality was the consequence of an accidental injury within the intendment of the Compensation act. If such were the circumstances, his death had its origin primarily in the intervening indirect force which produced acute intra-abdominal tension and strain.

On the evidence adduced, it was open to the triers of the facts to find, as they did find, that the workmen's demise would not have occurred but for the strain so resulting. The twisting and constriction of the contents of the hernial sac were ascribed by the physicians to the heavy strain induced by the lifting and carrying of the ties. The operating surgeon testified: "Some people have hernia for years but it never bothers them—it never becomes strangulated and they go on with it; * * * sometimes we see a scrotal hernia * * * the size of a football and the patient has no complaint at all except for the protrusion." In that situation, there was a definite and direct relation between the accidental strain so suffered by the workman and his death three days thereafter. The undue stress was the exciting cause of the operation of visceral force productive of the strangulation. The criteria of a compensable accidental injury are, first, was the employment one of the contributing causes without which the accident would not have happened; and second, was the accident one of the contributing causes without which the injury would not have been sustained. *Newcomb* v. *Albertson,* 85 *N. J. L.* 435. An accident which sets in motion "the undeveloped and dangerous physical conditions" with mortal consequences, is properly classable as the proximate cause of the fatality. *Geizel* v. *Regina Co., supra; Winter* v. *Atkinson-Frizelle Co., supra; Voorhees* v. *Smith Schoonmaker Co.,* 86 *Id.* 500; *Lundy* v. *George Brown & Co., supra; Bernstein Furniture Co.* v. *Kelly, supra; New York Live Poultry Trucking Co.* v. *Schwartz, supra.*

In fine, the particular provision under review has relation to the inception of the hernia, and not to the subsequent accidental aggravation of that condition. To illustrate: If the employe had sustained, years before, a traumatic hernia for which compensation had then been made, a subsequent acci-

dental aggravation of the diseased condition resulting in disability or death would clearly be compensable. Certainly, the existence of a hernia traumatic in its origin is not the determinative of the right of compensation for its accidental aggravation.

As stated, we consistently construed the Compensation act, prior to the amendment of this special act relating to herniæ, to embrace in the category of compensable injuries an accidental aggravation of a pre-existing disease or infirmity not the result of an accident arising out of the employment; and the failure of the legislature to deal in the amendment with this class of injuries in explicit language admitting of no doubt of the purpose is conclusive of the question.

It is the settled rule in this state, in aid of interpretation, that the Compensation act, grounded as it is in social and economic considerations, is to be liberally construed to effectuate the general legislative policy. *Sigley* v. *Marathon Razor Blade Co.,* 111 *N. J. L.* 25; *Hercules Powder Co.* v. *Nieratko,* 113 *Id.* 195; *affirmed,* 114 *Id.* 254. The special provision relating to herniæ is in the nature of an exception, and, by the same token, is to be strictly construed. A case not within its precise letter is to be excluded.

The employer argues that the deceased employe could not have met the requirements of the statute in question, because "the hernia had been existing for months." But this argument only serves to demonstrate the inapplicability of the statute to the case in hand.

It is also urged that recovery of compensation is precluded because the deceased did not, at the time of his employment, make known his affliction. This argument is equally unavailing. The right to the benefits of the act is not conditioned upon the existence of sound health at the time of the inception of the relation of master and servant. *Sigley* v. *Marathan Razor Blade Co., supra; Hercules Powder Co.* v. *Nieratko, supra.*

We do not perceive a causal relation between the decision in *New York Switch and Crossing Co.* v. *Mullenbach, supra,* and the special statutory provision under consideration. That

case did not deal with compensation for a hernia. It distinguished between the hernia itself and its subsequent accidental aggravation, and this distinction was carried into the statute. It is worthy of note that the Pennsylvania Superior Court gave a statute embodying the same principle a literal interpretation, and limited its operation to the consequences of the original hernia, as distinguished from the subsequent accidental aggravation of the infirmity. *Tragle* v. *Hollis Chocolate Co.,* 111 *Pa. Super. Ct.* 98; 169 *Atl. Rep.* 472; *Petrusko* v. *Jeddo Highland Coal Co.,* 109 *Pa. Super Ct.* 288; 167 *Atl. Rep.* 242.

We concur in the view of the Supreme Court that the deceased employe, at the time of the injury, was not engaged in interstate transportation or in work so closely related to it as to be practically a part thereof. The question is a mixed one of law and fact; and we find evidence to sustain the conclusion that decedent, at the time in question, was engaged in commerce intrastate in character. There is evidence of the storage of these ties for future needs. That being so, there was not that direct and immediate relation to interstate commerce contemplated by the Federal Employers' Liability act. 45 *U. S. C. A.,* §§ 51-59.

The judgment of the Supreme Court is accordingly reversed, and the judgment of the Court of Common Pleas affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, JJ. 3.

*For reversal*—THE CHIEF JUSTICE, HEHER, PERSKIE, HETFIELD, DEAR, WOLFSKEIL, RAFFERTY, COLE, JJ. 8.