WEBSTER *v.* LLOYD A. FRY ROOFING CO.

*(Nashville*, December Term, 1940.)

Opinion filed February 1, 1941.

Edgar Webster, of Memphis, for petitioner.

Winchester & Bearman, of Memphis, for defendant.

Mr. Justice McKinney delivered the opinion of the Court.

Petitioner, James P. Webster, instituted this proceeding against defendant, Lloyd A. Fry Roofing Company, to recover compensation for an alleged accidental injury arising out of and in the course of his employment. It is his contention that as the result of a strain in lifting heavy rolls of roofing he sustained a hernia or rupture.

Defendant is engaged in the manufacture of roll and shingle roofing, and was producing roll roofing when petitioner was injured on or about the 12th day of February, 1940. Petitioner had been in its employ for three years. This roofing was carried on a conveyer to the loading platform where it was removed by the "take-off man" and placed in an upright position on a truck where the "capping man" places a cap on one end of each roll. Plaintiff occupied the position of "capping man," but he was required to take the place of the "take-off man" each day while the latter was at lunch, and he was so engaged when injured. Each roll of roofing was 36 inches long, 10 to 12 inches in diameter, and weighed 90 pounds. Due to the inexperience of the "fixture man," this roofing had become congested when petitioner took the place of the "take-off man" about 11:30 on the day in question. As to what happened we quote from the testimony of petitioner, as follows:

"Q. What happened there, if anything, with reference to the speed at which you would work? A. As I said a while ago, the wires slipped out of the rolls, and they were slipping that day, and when you had to put them back like that, when they slipped out, that would make you work harder and faster, and I would be there and doing my best to catch up with them, to keep them from piling up, and it was when I was doing my best to catch up that I felt this stretching and a pain.

"Q. Had these rolls of roofing accumulated there? A. Yes, sir; there were 7 or 8 of them.

"Q. Accumulated? A. Yes, sir.

"Q. If you had not tried to catch up with them as they came off, what would happen to them? A. Well, you would have to get them out of the way, unless you wanted to stop the whole machinery.

"Q. Would they roll off on the floor? A. Yes, sir.

"Q. Did they roll off on the floor? A. Yes, sir.

"Q. Ordinarily how fast did the rolls come through, how fast did you have to pick them up? A. About 10 second apart.

"Q. About 10 second apart? A. Yes, sir.

"Q. But when they accumulated, then you had to take them off faster than 10 second apart? A. Yes, sir.

"Q. That is what you were doing? A. Yes, sir.

"Q. And of course, as I gather from your testimony, the faster these rolls would accumulate, then it made it necessary for you to work that much faster to take them off? A. Yes, sir; I would have to reach down and try and keep the rolls moving, and I would have to try to keep the wires in place, and it just made me work much faster, trying to keep up.

"Q. That is what you were doing? A. Yes, sir.

"Q. While you were doing that, did you feel any pain

or any other sensation? A. I felt a pain, it felt like a knife sticking in my left groin.''

Petitioner further testified that on the afternoon of his injury, while changing clothes in the dressing room, he discovered a bulge or lump in his groin where he had felt the pain a few hours before. This pain grew steadily worse, extending to his hips and back, and upon an examination by the defendant's physician it was discovered that he had a hernia. Petitioner also testified that he had never had hernia and never felt this pain before. Defendant denied liability; so that petitioner was successfully operated on by a surgeon of his own choosing, and in about twelve weeks had fully recovered and was able to resume his work.

Dr. Davis, who operated upon petitioner, and who was the only physician who testified in this case, stated that petitioner had traumatic hernia of recent origin; that the first symptoms of hernia are an uneasy feeling in the groin, a stinging pain or backache, and a bulge; and that any internal strain has a tendency to cause the character of hernia with which petitioner was afflicted.

In 71 C. J., 620, 621, it is said: ''The term 'accident,' as employed in the compensation acts, is broad enough to include a hernia or rupture sustained by reason of muscular strain or overexertion. While it is generally held that a hernia occasioned by an extraordinary, unusual, or unexpected exertion is a compensable 'accident' within the acts, yet there is disharmony among the various courts as to whether or not a hernia is compensable if occasioned by the workman's ordinary work done in his usual manner. In some jurisdictions a hernia resulting to an employee from an act done in a manner not unusual or unexpected, is not an injury by accident; on the other hand, it is the rule elsewhere that an employee doing

his work in his normal and regular way, whereby he sustains a hernia, suffers an accident for which he may obtain compensation.''

In the notes to the foregoing text, as well as in subsequent annotations, will be found numerous cases holding both ways as to liability in this character of case. Many of these cases are based upon statutes which differ from ours, as well as upon rules promulgated by various Industrial Commissions. It is unnecessary to undertake an analysis of these conflicting decisions since this Court is committed to the rule that such an injury is compensable.

In *Roehl* v. *Graw*, 161 Tenn., 461, 466, 467, 32 S. W. (2d), 1049, 1051, it is said: ''It is entirely consistent with the rulings of this court heretofore made in construction of our Tennessee statute to hold that the deceased suffered an injury by accident within the contemplation of the act when the evidence shows that he suffered hernia as the result of a strain as an incident of an effort put forth by him to push and move this heavy object.''

██ Upon further consideration, we feel constrained to adhere to our former holding on this question. If, as a result of a strain in lifting some heavy article for his employer, an employee dislocates his vertebrae, or breaks his wrist, or ruptures a blood vessel, it could not be seriously insisted that such unexpected injury was not accidental. If the strain or ''stretching,'' as petitioner terms his act, instead of causing one of the injuries just enumerated, produces a hernia, the occurrence is none the less accidental.

██ Our Workmen's Compensation Act, Code 1932, sec. 6851 et seq. is to be construed liberally in favor of the employee. *Frost* v. *Blue Ridge Timber Corp.*, 158 Tenn., 18, 11 S. W. (2d), 860; *Knox* v. *Washer*, 153 Tenn., 630,

284 S. W., 888; *Moss* v. *Aluminum Company of America,* 152 Tenn., 249, 276 S. W., 1052; *Leonard* v. *Cranberry Furnace Co.,* 150 Tenn., 346, 265 S. W., 543.

We conclude, therefore, that the trial court was in error in dismissing the petition.

■ With respect to the amount of compensation there was only one item in dispute, and that is the fee which should be allowed petitioner for his surgical operation. The trial court fixed this fee at $50. Petitioner is under contract to pay Dr. Davis $100, and the latter testifies that such a fee is reasonable and customarily charged. Dr. Davis further testified that when counsel for defendant's insurer was negotiating for a settlement as to said litigation he agreed that if the case was settled he would accept a fee of $50 for the operation if paid in cash at the time. In this situation we think petitioner is entitled to $100, as there is no evidence to support the finding of the trial court that $50 would be a reasonable fee.

Petitioner's average weekly wage was $18.46, and he was disabled for eleven weeks and five days, thus making his compensation $108.13. It is agreed that his hospital bill of $58.10 and an ambulance charge of $3 is reasonable. These four items aggregate $269.23, for which a decree will be entered in favor of petitioner, and the costs will be taxed to the defendant.