# IN RE FRIHAUF
## COLORADO FUEL & IRON CORP. v. FRIHAUF

(No. 2256; March 30, 1943; 135 Pac. (2d) 427)

480

For the plaintiff in error, there was a brief by *William E. Mullen,* of Cheyenne, and *C. H. Groves,* of Denver, Colo., and oral arguments by *Messrs. Mullen* and *Groves.*

482

For the defendant in error, there was a brief and an oral argument by *W. B. Jones,* of Wheatland.

BLUME, Justice.

This is a workmen's compensation case. Fred Frihauf, hereinafter called the workman, an employee of

the Colorado Fuel & Iron Company, was awarded the sum of $134.27 for temporary total disability by reason of a left inguinal hernia developed in the course of his employment. The employer, hereinafter, for the sake of brevity, called appellant, has brought this case to this court by petition in error.

The workman, 32 years of age, was engaged in the duties of general surface laborer at the appellant's iron ore mine. His testimony is to the following effect: He commenced to work for appellant about five years previous to the injury here in question, was then examined by the company physician for hernia, who "stuck his finger up the pelvix and made him cough," and certified him for employment. He was a professional boxer, and had been examined for hernia subsequently twenty or twenty-five times; the last time, about a year previous to the injury, by the examining physician for the State Athletic Board. He never had a protrusion before the strain hereinafter mentioned. On February 4, 1942, the workman was engaged in dumping cars. "Q. Just how do you perform that work? A. Well, you dump the doors and dump the ore in the hopper and then it goes through the plant and they pick out the rocks, and at the time I had a 3-inch pipe and was putting it in the door to dump it, and you have to raise it up; sometimes one man can't dump them and you have to ask for help. That is when I first felt it. Q. Does that require a lot of physical effort? A. Yes. You loosen the dogs. It has dogs on it, and you do that by pushing upwards on the pipe. Well, we was dumping a short-red car. It is a railroad car, and the door wouldn't wind up, and we had to raise them up. I suppose the doors weigh around 500 pounds. You stick a bar in, and if they don't wind up you have to raise them way up about chin level to get them hooked. And that is where I felt the worst pain in my side." That was the end of the work that evening. He leaned against a

fence for a while, and the pain was relieved. In about an hour and a half he went to the wash room, examined himself, and found a protrusion in his left side, about an inch and a quarter in diameter, the thicknes of a thumb and reddish in appearance. That was about midnight; the company physician is usually in bed at that time, and the workman went to bed. He went to Dr. Wood the next day, who found that he had a left inguinal hernia, and advised him to do nothing but light work. He did some light work during the rest of the week, but went to the Corwin hospital on Sunday, February 8, 1942, where he was operated on by Dr. Saenger on February 16. He went back to work fully recovered, on March 24, 1942. One Carl White testified that he saw the workman in the wash room in the evening of February 4; that he complained of pain; he was bent over; "a bump was raised up and it was real red and inflamed;" the workman was stooped over; "he went away slowly, like his leg was hurting, though he was usually a quick walker." The testimony of Dr. Wood and Dr. Saenger will be mentioned hereafter.

■ On cross examination the workman testified as to similar work previously. "Q. Had you ever done that work before February 4th? A. Yes, I had done it for six months; immediately preceding February 4th. Q. And you were handling the same kind of bar? A. Yes. Q. Prying open the same kind of door? A. Yes. Q. Under the same conditions? A. Yes." The appellant contends that in view of this testimony no recovery can be had by the workman; that there is no accidental strain within the meaning of our statute, if a hernia is sustained when performing work in the usual maner. Our statute on the subject as amended by Ch. 4, Session Laws of 1935, is as follows:

"A workman in order to be entitled to compensation for hernia must clearly prove:
1. That the hernia is of recent origin.

2. That its appearance was accompanied by pain.

3. That it was immediately preceded by some accidental strain suffered in the course of the employment.

4. That it did not exist prior to the date of the alleged injury. If a workman, after establishing his right to compensation for hernia, as above provided, elects not to be operated upon, and the hernia becomes strangulated in the future, the results from such strangulation will not be compensated."

In support of the contention that the workman under the foregoing testimony did not sustain an accidental strain, we are cited to McPhee Mfg. Co. v. Industrial Comm., 67 Colo. 86, 185 Pac. 268, and Industrial Comm. v. W. A. Hoover & Co., 82 Colo. 335, 259 Pac. 509. These cases are hardly in point, for they did not turn on the fact that the workman was doing his usual work in his usual way, but because testimony was lacking that the workman sustained any strain at all when performing his work. See in contrast Central Surety & Ins. Co. v. Ind. Comm., 84 Colo. 481, 271 Pac. 617. It is not necessary in this case to say that every strain, however slight, is sufficient to meet the statutory requirement. See Mathews v. Contracting Co. (Tenn.) 163 S. W. (2d) 59, 60. But in this case a door weighing 400 pounds was lifted or pried open, which necessarily involved considerable strain. In a note to 98 A. L. R. 205 it is stated that "it has been generally, though not universally, held that a hernia sustained as a result of a strain by an employee while performing his work is an accident, or an accidental injury." See also note 114 A. L. R. 1342. Whether or not an injury is compensable when it occurs while the workman is performing his ordinary duty in a normal manner is discussed in 71 C. J. 616-621, and the decisions are not harmonious. The point seems to be settled in this state, contrary to the contention of appellant ,by the case of In Re Scrogham ( 52 Wyo. 232, 73 P. (2d) 300, in which the contention here made was made and argued by both sides. In

that case the workman sustained a rupture (hemorrhage) in the eye by reason of lifting sacks of seed beans, weighing from 125 to 150 pounds each, which was his usual work in which he had been engaged for several months. Mr. Justice Riner, who wrote the opinion, cites and quotes at length from the case of Fenton v. Thorley (1903) A. C. 443, one of the leading cases on hernia. A number of other decisions were reviewed, and we held that the workman was entitled to compensation. In 71 C. J. 621 the conflict of authorities is stated in cases dealing with hernia. The greater number of authorities which have passed on the question have held that an employee doing his work in his normal and regular way whereby he sustains a hernia, suffers an accident which is compensable, provided other conditions, requisite under the statute, exist. Carr v. Const. Co. (Mo. App.) 18 S. W. (2d) 897, 899; Terre Haute Mfg. Co. v. McHale, 76 Ind. App. 565, 132 N. E. 698; Traveler's Ins. Co. v. Locke, 56 F. (2d) 443; Biggs v. Glass Co. (La. App.) 170 So. 273; Webster v. Fry Roofing Co., 177 Tenn. 122, 146 S. W. (2d) 946; Creamery Package Co. v. Ind. Comm., 226 Wis. 429, 277 N. W. 117; Smith v. Cabarrus Creamery Co., 217 N. C. 468, 8 S. E. 231; Duff Hotel Co. v. Ficara, (Fla.) 7 So. (2d) 790; Sappala v. Ind. Comm., 82 Wash. 314, 144 Pac. 54; Paccardi v. Pub. Serv. Comm., 75 W. Va. 542, 84 S. E. 242; Guguere v. Whiting Co., 107 Vt. 151, 177 Atl. 313; Cook v. Winget, 60 Ida. 561, 94 P. (2d) 676 Witt v. Food Mkt., 122 Pa. Super. 557, 186 Atl. 275.

In the late case of Webster v. Roofing Co., supra, the workman sustained hernia as a result of a strain in lifting heavy rolls. The court, under a statute on hernia similar to ours, stated that "if as a result of a strain in lifting some heavy article for his employer, an employee dislocates his vertebrae, or breaks his wrist, or ruptures a blood vessel, it could not be seriously insisted that such unexpected injury was not accidental.

If the strain of 'stretching', as petitioner terms his act, instead of causing one of the injuries just enumerated, produces hernia, the occurrance is none the less accidental". In Smith v. Cabarrus Creamery Co., supra, the workman sustained a hernia by lifting a heavy box weighing from 125 to 150 pounds, as he had done many times in the course of his employment. The court, holding ,under a statute similar to ours, the hernia compensable, stated that "if the plaintiff had burst a blood vessel or broken a leg or pulled a tendon under the strain, there would be little argument. The injury he suffered is no different in principle. * * * We know that the vast majority of hernia are produced by the strain of lifting. To adopt the theory presented by defendants would relieve industry from liability for most of the hernia injuries it causes. This we do not believe within the contemplation of the statute, liberally construed". In Palermo v. Preserving Works, 141 Pa. Super Ct. 211, 216, the court stated: "Appellant stresses the fact that appellee had lifted between seven and eight hundred similar cases on the day of the accident without ill effect. But this would seem to strengthen the contention that something unusual occurred when appellee lifted the case in question, for the result which followed at that time had not occurred when any of the other cases had been lifted"'. We think that accidental injury was sufficiently shown in this case.

■ Appellant further contends that the hernia of the workman is congenital in origin, as shown by the uncontradicted testimony of the physician herein; that, accordingly, it is not compensable; that "evidence of a recent protrusion is not sufficient under the law to prove hernia of recent origin". Counsel for appellant seem to think that they are justified in their contention by language contained in Wilson v. Holly Sugar Co., 47 Wyo. 141, 33 P. (2d) 253. But that case merely decided that since no discoloration was found to exist

upon the appearance of a protrusion, as the statute then in effect required, the workman had failed to prove his case.

The statute requires that a hernia, to be compensable, must be (1) of recent origin, and (4) "that it did not exist prior to the date of the alleged injury". The fourth condition of the statute does not seem to add much, if anything, to the first condition. The testimony of Dr. Saenger, who stated that he examined some 5000 cases of hernia, was to this effect: Q. Will you describe the protrusion? A. The man had an easily reduced left indirect inguinal hernia; the sac extended down approximately to the external ring. It was very wide at the base. * * * A hernia of this kind is congenital in origin. He has had this hernia ever since birth. The cord was found to be thick, with considerable fat along it. The hernial sac was approximately an inch and a half long. If of recent origin, it would have caused the collapse of the patient at the time the hernia was produced; it would have been impossible for him to continue work, if the hernia was produced by a single strain, as alleged". Dr. Wood testified that when the workman appeared before him the latter had a left inguinal hernia; the hernia was protruding, but it wasn't red; he didn't complain of any particular pain; it was easily replaced; he wouldn't say it was of recent origin; man is born with hernia; he had heard of some traumatic hernias, but had never seen any. "We can determine whether a man has a congenital defect in 90% of the cases; but we miss some". "Q. You believe then that a man can be in perfect physical condition and still sustain (?) or have a congenital hernia? A. Absolutely."

The impression we get from the testimony is that the recent protrusion—appearance— of the hernia of the workman is not denied, but is admitted; that the hernia, however, was congenital, but dormant. At least, it does not appear that the so-called pre-existing hernia

was anything more than a *defect* in the structures of the body, or predisposition for a hernia, which might develop into a true hernia. That appears particularly in the testimony of Dr. Wood, that a man might be in perfect health, and yet have a congenital hernia. And counsel are evidently of the impression that such "congenital hernia" is a hernia in contemplation of the statute which bars a workman from recovering, if and when the hernia makes its apearance. Our inquiry, then, must be directed to the point as to what the legislature meant by the term "hernia"'. In Berner v. Coal & Iron Co., 100 Pa. Super. 324; Pollock v. Clairton, 100 Pa. Super. 333, it was said that the legislature used the term in the popular sense. In Gray, Attorney's Textbook of Medicine, 509, it is said that "a hernia is a *protrusion* of any organ through an abnormal opening in the wall of the containing cavity. When the word hernia or rupture is used without qualification, it is intended to mean a protrusion from the abdomen, usually of the intestine, through an abnormal opening of the abdominal wall". In Dr. Kessler's Accidental Injuries (1931), 400, it is stated that "hernia may be defined from the medical and surgical point of view as a *protrusion* of a viscus or organ from its normal situation within a cavity through the walls of that cavity". On the following pages the author enumerates the causes, classifying them as predisposing or congenital on the one hand, and acquired or exciting on the other. In Webster's New International Dictionary (2nd ed) it is said that hernia is "a protrusion, consisting of an organ or part projecting through some natural or accidental opening in the walls of the natural cavity". Dr. Malloy, Legal Anatomy and Surgery, 571, states that "a hernia is a rupture. It is a protrusion of an organ or part of some tissue, which has escaped from its normal situation and projects through a natural or accidental opening in the walls of the cavity within

which it is contained". Every definition which we have found agrees with these texts, including the definitions contained in the decided cases. Robbins v. Gas Engine Co., 191 Mich. 122; Southern Casualty Co. v. Fulkerson (Tex.) 30 S. W. (2d) 911; Berner v. Coal & Iron Co., 100 Pa. Super. 324; Central Surety & Ins. Co. v. Ind. Comm., 84 Colo. 481, 271 Pac. 617; Hallack & Howard Lumber Co. v. Bagley, 100 Colo. 402, 68 P. (2d) 442; Stoddard v. Mason's Blue Link Stores, 55 Ida. 609, 45 P. (2d) 597; Cook v. Winget, 60 Ida. 56, 94 P. (2d) 676; Spirakoff v. Mining Co., 105 Colo. 552, 100 P. (2d) 154, 157; Fulerri v. R. R. Co., 117 N. J. L. 508, 189 Atl. 126. In Taylor v. Kirby Lumber Co. (La.) 182 So. 169, and Cormier v. Furnace Co. (La.) 9 So. (2d) 814, it was held that an enlargement of the inguinal ring, or a large relaxed inguinal ring is not hernia; that some call it congenital, some a potential hernia, some as a beginning hernia, but that it is not a true hernia and compensable until a protrusion appears. Similar in effect is Cessante v. Ford Motor Co., 283 Mich. 521, 278 N. W. 671. See also Clairborne v. Central Lumber Co. (La.) 10 So. (2d) 501. If, then, hernia is a protrusion, it necessarily follows that a so-called "congenital hernia" does not come within the definition of the term unless it has actually protruded. A protrusion at birth is conceivable, but would, of course, be rare and abnormal. Hence, if the above definition of hernia as a protrusion is correct, the term "congenital hernia" would ordinarily be misleading, unless all that it connotes is borne in mind, and testimony merely that a workman's hernia is congenital, without more, would be of little value in determining whether or not compensation is allowable. The testimony of Dr. Saenger and Dr. Wood in this case seems to be of that nature. Dr. Malloy, whose definition we have given above, speaks on page 574 of a congenital hernia, and on page 575 of acquired hernia, and he evidently means nothing

more than Dr. Kesler, above mentioned, that a condition may exist from birth which is a predisposing cause of hernia. But such predisposition is not, as above mentioned, a hernia, and it has been held in a number of cases that it does not prevent compensation under the workmen's compensation laws, if a true hernia should appear and the various requirements of the statute have been proved. 71 C. J. 622; Smith v. Coal Co., 71 Pa. Super. 325; Stoddard v. Mason's Blue Link Stores, supra; Cook v. Winget, supra; Fuferri v. R. Co., 117 N. J. L. 508, 189 Atl. 126; Henderson v. Graniteville Co., 197 S. C. 420, 15 S. E. (2d) 637; Casper Cone Co. v. Ind. Com., 165 Wisc. 255, 161 N. W. 784; L. R. A. 1917 E. 504; see also cases note 19 A. L. R. 102. We applied the same principle in In Re Scrogham, supra. In the Stoddard case the theory of appellant was similar to the theory of counsel for appellant in this case. That involved a mesentery hernia. To state the theory of appellant in that case in the words of the court: "Appellant's theory is that the rent, tear, perforation, or rupture in the mesentery in and of itself constituted a hernia, and that under I. C. A. section 43-1116, unless the proof discloses that the aperture in the mesentery occurred or made its first appearance at the time of and as a result of the accident, respondent suffered no compensable injury, even though the proof conclusively shows that the protrusion of the bowel or intestines through the aperture, or perforation, resulted directly from the accident, and did not exist in any degree prior thereto". To this the court answered: "From the authorities it appears that the conclusion must be reached that a hernia is the protrusion of some organ or tissue from its normal situation through an accidental or natural opening in the wall of the cavity in which it is contained, and that the mere presence of a perforation or an aperture in the cavity wall, either accidental or natural, and through

which some organ or tissue may protrude at a later time, is not a hernia within the meaning of I. C. A. 43-1116". The statement was approved and quoted in Cook v. Winget, supra. And it may be noted that the Idaho statute contained a clause stronger than ours, requiring, in order that a hernia may be compensable, it must appear that it did not previously exist in any degree. In Newman v. Rogers Lumber Co., 56 Ida. 206, 52 P. (2d) 136, it appears that the condition of the workman mentioned in that case was, if we understand it right, not altogether unlike the condition of the workman in the case at bar as described by Dr. Saenger. In that case the workman was operated on for hernia, and it was found "that what is designated in the record as the hernial sac was bound to the surrounding tissue by dense fibrous adhesions, which cut almost like cartilage. The sac was densely adherent to these tissues, indicating to the physician that the sac had existed for some years". The Industrial Accident Board found that the hernial sac, which was referred to as a herniation of the peritoneum, and which may have been a congenital condition or otherwise, was a hernia, although containing none of the abdominal content prior to the accident. The court, reversing the board, after referring to the definition of a hernia as a protrusion of some organ or tissue, stated: "It would seem that where the words 'organ' or 'tissue' are used in the foregoing definition, it does not include that which has been here designated as the hernial sac, formed by the peritoneum in this instance, but rather has reference to some organ or tissue which enters or protrudes into the hernial opening and hernial sac. It follows, therefrom, as a matter of law, that respondent did not have a hernia in any degree prior to the injury by accident." In Henderson v. Graniteville, supra, the workman had been operated on for hernia previously, and had been discharged by his physician as cured. He subsequently

sustained another hernia, which was brought in question in the case, and it was argued that because there was a predisposition to sustain another hernia, no compensation could be allowed. The court ruled otherwise.

It seems to be thought by many that most herniae are congenital; that is to say, that there is a predisposition for protrusion from birth. If, accordingly, the theory of appellant is correct, compensation would be allowable in but few cases of hernia. But, as we have already seen, courts have not been convinced that that was the legislative intention. We have already quoted from Smith v. Cabarrus Creamery Company, a Tennessee case, a state which has a statute on hernia almost like ours, and have seen that the court in that case did not believe that within the contemplation of the statute, liberally construed, industry should be relieved from most cases of hernia, most of which, as stated by the court, "are produced (protrude) by the strain of lifting". The South Carolina court, under a statute on hernia also very similar to ours expressed the opinion in Rudd v. Fairforest Finishing Co., 189 S. C. 188, 200 S. E. 727, 729, that "in our opinion, the legislative purpose evident in our Act is to restrict compensation for hernia to those cases where there is a relative and reasonably close coincidence between the accidental injury and the hernia, and where it is clear that no other agency intervened as to time, place, or action, to cause the injury". In Arduini v. General Ice Cream Company, 123 Conn. 43, 46, 192 Atl. 314, the court stated that "the underlying reason for such special provisions (as to hernia) in this and other states is that owing to the nature of hernia and its onset, a lifting or straining, perhaps months before, may be assigned as the producing cause and the basis of a claim for compensation, the merits of which, due to lapse of time and lack of notice to the employer, are extremely difficult of just determination, and the pur-

pose is to restrict compensation to those cases where there is a relative coincidence of accident and some significant manifestation of a hernia resulting therefrom, and thereby measurably relieve the difficulty." Even New Jersey, which, perhaps, goes farther than any other state in eliminating congenital herniae from compensable injuries, does not go nearly as far as counsel for appellant would go, and, in fact, the courts in that state, in a general way, sustain the decisions already cited. Without taking the space to set out the whole statute, suffice it to say that the statue in brief provides that inguinal hernia will be considered congenital or of slow development, and not compensable, unless caused by real trauma or unless certain things are conclusively shown, including the fact that the hernia was caused by such sudden effort or strain; that the descent of the hernia followed the cause; that there was severe pain in the hernial region; that the employee was compelled to cease work immediately, etc. 3 Schneider, Compensation Statutes, 2291. Construing this statute, the court stated in Fuferri v. R. R. Co., 117 N. J. L. 508, 189 Atl. 126: "It is fundamental in the statute that an inguinal hernia resulting from an accident is compensable, even though the employee had the weakness of body structure predisposing to that condition. But in the absence of the elements of proof laid down in the statute, the hernia is considered the emanation of disease only; it is in no sense classed as non-compensable traumatic or accidental hernia. In the case of hernia that does not meet the statutory standard of proof, the classification is non-traumatic—a disease unassociated with accident—and therefore non-compensable. * * * And so the accidental aggravation of an existing hernia is compensable, if proof brings it within the category". Huha v. Coke Co. (Pa. Super.) 27 A. (2d) 739, and Zionek v. Glen Alden Coal Co., 105 Pa. Super. 189, 160 Atl. 154, agree with the New Jersey

court that aggravation of a pre-existing hernia is compensable. But the contrary is held under statutes similar to or almost identical with ours in Mathews v. Contracting Co. (Tenn.) 163 S. W. (2d) 59; Jordan v. State Compensation Comm., 120 W. Va. 142 ,197 S. E. 20; Cueno Press Co. v. Ind. Comm., 342 Ill. 569, 173 N. E. 470; see also Mirific Products Co. v. Ind. Comm., 356 Ill. 645, 191 N. E. 203. That point is not involved in this case, and so we express no opinion thereon. This is a different case. It is, of course, true that the statute on hernia was passed for the purpose of limiting liability in such cases, but with all the books defining hernia in terms of a protrusion, it would be unreasonable not to hold that the legislature passed the act with that meaning in mind, and the limitation of liability intended by it must be construed on that basis. With the light which we have on the question before us, imperfect, perhaps, as that still is, we are unable to see how we can sustain the contention of appellant above discussed. It may not be amiss, in this connection, to quote from Dr. Kessler, from whom we have already quoted, and who wrote on page 412 as follows:

"The spector of an army of fraudulent claims for hernia is not as menacing to these employers who have been progressive enough to institute physical examination of their employees, both at the time of hiring and at periodical intervals. The record of a preexisting hernia bars a claimant from compensation unless the existing hernia becomes strangulated. With a record of no hernia at the time of hiring and the occurrence of a hernia during the course of employment, the task of deciding the compensability becomes easier. The fact that no hernia existed prior to the alleged accident and there was a corroborated history of some strain or unusual effort are in my mind the two most important criteria of the responsibility for a hernia and payment of compensation by the employer."

■ It is further contended that the workman did not *"clearly* prove" the hernia, as the statute requires.

We shall limit ourselves with cases dealing with hernia. The South Carolina statute requires that the elements of hernia must be definitely proven to the satisfaction of the commission. It was stated in Henderson v. Graniteville Company, supra, that "this can only mean that the proof should be so definite as reasonably to satisfy them". In Sussick v. Glen Alden Coal Company, 108 Pa. Super 593, 165 Atl. 658, the court stated that "we are of the opinion that the evidence in this case was sufficient to convince the fact-finding body that the sudden effort or severe strain, to which the claimant was subjected, was the cause of his sustaining a hernia. That meets the standard of 'conclusive proof' established by the act". In Consolidated Coal & Coke Co. v. Lazaroff (Colo.) 124 P. (2d) 755, 756, the court stated that "to 'clearly prove' a fact does not require that the proof should be more than sufficient to satisfy the mind of the finder of facts that its weight is such as to cause a reasonable person, under all the circumstances, to accept the fact as established'". In Di Mieri v. Metafield, 126 N. J. L. 484, 20 A. (2d) 39, the court discussed at length the term "conclusive proof", and stated among other things that "We think, further, that the statutory phrase should be construed to mean such proof that the fact finder, after hearing the testimony in support of the claim and contrasting and weighing it with that produced to rebut it, is clearly of the view that the claim has been sustained by evidence that is convincing in character". See also other cases, cited infra.

In the case at bar there was evidence of a strain by reason of lifting a heavy door; that is was immediately followed by pain; that there was a protrusion when, shortly afterward, the workman examined himself; that he walked with difficulty; that he was subsequently operated on for hernia; that he had been examined for hernia when he was employed five years previously;

that he had also been examined for hernia and other conditions from 20 to 25 times since, the last time being about a year previous to the injury in question and no hernia had been found; that (according to Dr. Wood) hernia, if it exists, is usually discovered by an examining physician in 90% of the cases. It is hardly probable that the workman could have done the heavy work he did on February 3, if the hernia had made its appearance previously. We think that an ordinary man would consider the testimony as clear and convincing proof that the accident was the proximate substantial cause of the hernia. The trial court had the right to take the same view. See also Singer v. Ind. Acc. Comm., 105 Cal. App. 374, 287 Pac. 567.

■ It is also contended by appellant that medical testimony is required in the case of hernia, and that a layman is an incompetent witness to prove the elements of hernia required to be proved by the statute, and that in this case the court erred in ignoring the testimony of the physicians who testified in this case. This point would not, perhaps, have been urged, had counsel known our decision as to what constitutes a hernia. We are cited to Staker v. Ind. Comm., 61 Utah 11, 209 Pac. 880, where the court stated that: "The question of determining the cause of hernia is always a difficult one, and cannot justly or properly be determined as a matter of law, but should be determined largely from scientific investigation and examination made by those schooled and skilled in the practice of the medical profession". The court did not decide that medical testimony was necessary in every case of hernia. No such point was before it. The remark was in the nature of obiter dicta. In some cases medical testimony is necessary. See cases collected in Fourth Decennial Digest, Workmen's Compensation, Section 1417. But that is by no means true in all cases. Case of Crowley, 130 Me. 1, 153 Atl. 184; M. P. Moller Motor Car oo. v. Unger,

166 Md. 198, 170 Atl. 777. In Benci v. Coal Co., 131 Pa. Super. 435, 200 Atl. 308, the court held that where injuries are so immediately and directly or naturally and probably the result of an accident, medical testimony is not essential to find a causal connection. To the same effect is Johnson v. Oil Co., 131 Pa. Super, 266, 200 Atl. 224. In Harrington's Case, a case involving hernia, 285 Mass. 69, 188 N. E. 499, the court stated that "the requirement of proof by direct medical testimony of causal relation between the employment and the injury sustained by the employee was not necessary and may have been inferred by the trier of fact". In Bontempt v. Construction Co., 107 Pa. Super. 258, 163 Atl. 46, the company showed by medical testimony that the hernia in that case was not of traumatic origin. There was no medical testimony offered on behalf of the workman to connect the hernia with the injury. The court stated: "The appellant's chief contention is that the claimant failed to furnish 'conclusive proof' as required. * * * The legislature no doubt contemplated that convincing proof should be offered to support an award, but there is no expression in the amendment, nor can we read one therein, that requires that proof by medical testimony shall be essential to recovery, if, as here, there is such close connection between the accident and the injuries as to satisfy a reasonable person as to the cause of injuries. The claimant testified that, before the accident, he never had abdominal pains, and that there was no symptom of rupture when he was examined by a doctor about two years prior thereto in connection with his admission to several organizations to which he belonged". The award was sustained. In Zionek v. Glen Alden Coal Co., supra, the court stated that "all the medical testimony conceded the existence of the hernia. With that fact established, claimant's own testimony, if believed by the referee, would have justified the award". In Testa v. National Radiator

Corporation, 141 Pa. Super. 206, 15 A. (2d) 42, the court stated that "the statute does not require medical testimony to establish the relationship between the alleged accident and the disability from which appellee suffers. Where, as here, there is such close connection between the accident and the injury as to satisfy a reasonable person as to the cause of the injury, the relation between the two is sufficiently shown. And this is so even though section 306 (g) supra, makes it necessary for appellee to furnish conclusive proof". To the same effect is Palermo v. Preserving Works, 141 Pa. Super. 211. In the case at bar the close connection mentioned in these cases was shown; the existence of hernia—the protrusion—subsequent to and almost immediately following the accident is admitted, or not denied, and we think that the trial court was justified in holding that the workman proved his case clearly. It follows that the judgment of the trial court must be, and is, affirmed.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.