## McMAHAN v. TRAVELERS INS. CO.
### No. 2025.

United States District Court,
E. D. Tennessee, N. D.

July 24, 1953.

Jerome Templeton, Knoxville, Tenn., David M. Pack, Sevierville, Tenn., for plaintiff.

Frantz, McConnell & Seymour, E. Bruce Foster, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

This is an action to recover benefits under the Tennessee Workmen's Compensation Law, Code § 6851 et seq. The complaint alleges total and permanent disability and the proof, as well as plaintiff's manifest condition, sustains the allegation. Yet, despite the humane purpose of the Compensation Law and the liberal construction and application it has had from the courts, this action, for reasons hereinafter appearing, must fail. Except as to certain occupational diseases, only those disabilities are compensable which are attributable to injury by accident arising out of and in the course of the employment. Code Section 6852(d). This case does not fall within the compensable class.

Plaintiff is 63 years of age and, until he quit work, was employed by Fulton Sylphon Division of the Robertshaw-Fulton Controls Company. He had been a foundry employee since he was 20 years of age, his specialty being that of a molder. During the last few years of his employment his health deteriorated and as early as 1949, the medical testimony showed that he had high blood pressure, attributable to hardening of the arteries of a gradual development and of a progressively worsening condition. It was his doctor's opinion that he should not have been working after 1949.

In February 1952, upon the advice of plaintiff's doctor, the employer transferred plaintiff from the foundry room to the cleaning room, the work in the latter being lighter than that in the former. From 1949 onward, plaintiff on several occasions complained of dizziness and headaches. His work from 1949 onward, as before that date, involved some heavy lifting and some exposure to above-normal temperatures. Exertions and exposures were not worse, but lighter, after his transfer to the cleaning room. Although in the cleaning room he did some lifting and other work that required considerable physical exertion, there is no evidence of untoward, fortuitous or other stress that could be construed as accidental. The employee went along with his work as he had been doing over a period of years. However, he was doing a work which, because of his deteriorating physical condition, he was progressively less able to do.

On March 4th and 5th, 1952, his work was as strenuous as it was on March 6th. His last day of work was March 6th. On that day there was nothing unusual about his work. During the afternoon of March 6th, according to plaintiff's own testimony, he began to suffer from a severe headache. But his group leader testified that there were no indications of anything unusual being wrong with the plaintiff on that date. After closing time, on March

288

6th, he went home. At home that afternoon or evening, plaintiff's condition was such that an effort was made on his behalf to procure the services of a doctor. Unable to procure the doctor's services at that time he went, or was taken, to see the doctor on March 7th. By then he was unsteady in handling himself, his power of speech had become seriously impaired and, following an examination, the pronouncement was made by the doctor that the plaintiff had suffered a stroke. This stroke, it has been explained by the doctor, probably had its origin in a blood clot on the brain, and the clot in turn, it is explained, was the result of hardening of the arteries and high blood pressure.

On the question of causation, the doctor testified that the plaintiff's work on March 6th could have aggravated the high blood pressure and brought on this stroke earlier than it would have otherwise occurred. Yet, the doctor would not say positively that anything plaintiff engaged in on March 6th did hasten the stroke. In the doctor's opinion "it would not have been too surprising if he had one at home asleep in bed. That is the normal course of a hypertension."

Here the proof is conclusive that plaintiff's disability was caused by high blood pressure. Working at a job could have brought the ailment to its culmination sooner than it would have reached the disabling stage, had plaintiff not been employed. But there is no proof here of an accidental injury. For an injury to be compensable, the proximate cause of the injury complained of must have been an accident. Thames v. H. K. Ferguson Co., 188 Tenn. 448, 221 S.W.2d 97. Formerly it was held that to be accidental the proximate cause of an affliction must have been "a determinate or single occurrence identified in space or time." Morrison v. Tennessee Consolidated Coal Co., 162 Tenn. 523, 527, 39 S.W.2d 272, 274. But the more recent view is that the injury may be accidental, though the culmination of numerous over-exertions, impacts or jars. Benjamin F. Shaw Co. v. Musgrave, 189 Tenn. 1, 222 S.W.2d 22.

Yet examination of the cases, including the Musgrave case, indicates the necessity of causation between a recognizable fortuitous event and the injury. As where a congenitally weak back is strained by the lifting of a particular weight. Swift & Company v. Howard, 186 Tenn. 584, 212 S.W.2d 388. Or where repeated lifting of objects culminates in the production of a hernia. Webster v. Lloyd A. Fry Roofing Co., 177 Tenn. 122, 146 S.W.2d 946. Or where nervous strain and excitement from a finger injury results in a heart attack. Lucey Boiler & Manufacturing Corporation v. Hicks, 188 Tenn. 700, 222 S.W.2d 19. Or where a sudden over-exertion is followed by heart failure as the immediate result. Cambria Coal Co. v. Ault, 166 Tenn. 567, 64 S.W.2d 18. Or where heat stress results in prostration, heart failure and death. Milstead v. Kaylor, 186 Tenn. 642, 212 S. W.2d 610. Or where a blood disease is aggravated and death hastened by a recognizable specific injury that causes blood poisoning. McCann Steel Co. v. Carney, 192 Tenn. 94, 237 S.W.2d 942. Or where a trauma continues to worsen without an intervening cause and requires the more reasonable inference that the trauma caused the final coronary thrombosis that produced death. Howell v. Charles H. Bacon Co., D. C.E.D. Tennessee, N.D., 98 F.Supp. 567; affirmed, 6 Cir., 197 F.2d 333. Or where the circumstance of death at the job raises a presumption of accidental injury as the cause of death. Home Ice Co. v. Franzini, 161 Tenn. 395, 32 S.W.2d 1032.

In this case there are no presumptions of compensability. For all that appears plaintiff did his day's work under conditions no more exacting or fortuitous than those of other days. Hence the element of accident is unproved. Plaintiff did not collapse or become disabled from illness on the job, hence no presumption of accidental injury arises in his favor. He finished his day's work and went home. Dizziness and headache, which plaintiff says commenced during the day, indicated his need of a doctor. The record shows that he had needed the services of a doctor on many prior occasions and because of the same affliction

he had on March 6th. That working at a job was bad for him is supported by the medical testimony. If an untoward event in the nature of an accident precipitated or hastened his stroke, it has not been proved. Nor do proven circumstances warrant an inference of accidental injury.

The result is, that plaintiff's action must be dismissed.

Let an appropriate order be prepared.