429 P.2d 320 (1967)
In the Matter of the Workmen's Compensation Claim of Dean L. HARDISON, an Employee of Columbus Plumbing & Heating Company.
COLUMBUS PLUMBING & HEATING COMPANY, Appellant (Employer below),
v.
Dean L. HARDISON, Appellee (Employee below).
No. 3596
Supreme Court of Wyoming.
June 26, 1967.
*321 Lawrence A. Yonkee, Austin T. Redle, of Redle, Yonkee & Redle, Sheridan, for appellant.
William K. Archibald, Sheridan, for appellee.
Before HARNSBERGER, C.J., and GRAY, McINTYRE, and PARKER, JJ.
Mr. Justice GRAY delivered the opinion of the court.
Claiming to have sustained an injury resulting in a bilateral inguinal hernia in employment covered by the Workmen's Compensation Law, Dean L. Hardison filed a claim in the court below seeking an award of statutory benefits for temporary total disability. The claim was resisted by the employer, Columbus Plumbing & Heating Company. Following a hearing in the matter the trial court entered an order awarding to claimant the benefits claimed, and the employer appeals. The sole question before us is the sufficiency of the substantial evidence to sustain the award.
There is little if any, dispute in the facts. Claimant was 56 years of age and was employed as a "plumbing foreman" by the employer for a period of some five months ending on August 3, 1966, when he was "pulled off the job" by his union. While his work was supervisory, he also engaged in manual installation of plumbing fixtures which entailed lifting. Claimant estimated that the heaviest item handled weighed about 400 pounds, for which he needed help, and probably the maximum weight that he might have "juggled around by myself" was 200 to 250 pounds. Claimant could not recall any instance of "specific lifting" or incident on any specific day that might have caused the hernia, and he did not discover the protrusion indicating the hernia until he was drying himself after bathing at home on or about July 20, 1966. He could not "truly say" that he suffered any "discomfort" prior to the discovery of the protrusion, his only explanation being that he had "A vague feeling of insecurity" in the area of the injury which he described as "a vague feeling of not at all being well." On cross-examination claimant said it was that feeling, rather than pain, that directed his attention to the protrusion, although he had just previously agreed that he "just happened to be looking there and saw the condition" when he was drying himself. He reported for work the next day and worked for about two weeks; and while he was careful about "lifting," there was no discomfort. While claimant said he remarked to his employer that he believed he had "ruptured himself," he did not fix the time and the employer's report filed states that this occurred at the time claimant quit on August 3, 1966.
Dr. Araas, who examined claimant on or about August 4, 1966, testified that he examined the areas of the groin of which claimant complained and discovered the hernia, which he felt was a "direct" type; that there was no relationship between an older repair and the "newer injury"; that a movement of the body coupled with lifting can cause such an injury, but he thought the type here "is directly related to some heavy lifting"; when asked if such an injury was always accompanied by pain, he said that more often than not the injury is not accompanied by pain and a person feels a little tug in the groin "or they feel a slight pain in the groin at the time they've done the heavy lifting that brought the hernia down," or they might not notice *322 anything until they get home that evening and are bathing or changing clothes when they notice the lump in the groin; when asked if discovery of the lump could relate back to an injury occurring a week or ten days prior thereto, he answered, "Oh, it might go back that far, but that seems sort of far-fetched. You can actually sense that there's something going on. At least the ones I have seen, they have a sensation that something has occurred at the time of the injury. If they haven't, why, it usually isn't related to the injury." On cross-examination he said that there was no apparent "subcutaneous bleeding" which would indicate the tearing of tissue or the breaking of a blood vessel. In response to a question by the court as to how long it might be after the "rupture" that a person would be aware of or suffer pain the doctor answered, "Well, they may or may not. They experience a fullness in the lower abdomen or a sensation that something is not quite right, you see, rather than just a painful thing." Surgery was recommended and was performed on August 12, 1966.
In its Order of Award the trial court found that the injury occurred on July 20, 1966, while claimant was working in a covered occupation as a result of "lifting." Such general finding implies a finding of all the facts essential to meet the standards of proof laid down by the statute before a claimant is entitled to compensation for hernia.
The pertinent provisions of the statute in question, § 27-84, W.S. 1957, are:
"In all cases where a workman shall suffer a hernia, in order to be entitled to compensation he must clearly prove:
"1. That the hernia is of recent origin;
2. That its appearance was accompanied by pain;
3. That it was immediately preceded by some accidental strain suffered in the course of the employment;
4. That it did not exist prior to the date of the alleged injury."
The special provisions of the law relating to hernia, like the other general provisions, are to be liberally construed in favor of the workman. Industrial Commission v. Pacific Employers Ins. Co., 118 Colo. 496, 197 P.2d 157, 158; Sandoval v. Industrial Commission, 3 Ariz. App. 449, 415 P.2d 463, 464. Nevertheless, the courts are not free under the guise of construction to extend the beneficent purpose of the law to injuries that do not reasonably fall within the reach of the language used. Furthermore, the rule is not to be related to the evidence offered, Jennings v. C.M. & W. Drilling Company, 77 Wyo. 69, 307 P.2d 122, 126, and does not relieve a claimant of his burden to "clearly prove" each of the elements that entitle him to compensation. Even as a general proposition, his burden is to show "the actual time of the compensable injury, its cause, and its relation to his employment at the time of injury," Bemis v. Texaco, Inc., Wyo., 401 P.2d 708, 709; and the time of injury is particularly important in cases involving hernia, Johnson v. Ideal Bakery of Rawlins, 51 Wyo. 111, 63 P.2d 791, 792. In Colorado Fuel & Iron Corporation v. Frihauf, 58 Wyo. 479, 135 P.2d 427, 433-434, we said that the term "clearly prove" required evidence that was clear and convincing, and we just recently said in Pangarova v. Nichols, Wyo., 419 P.2d 688, 695, that although this meant something more than a preponderance, it did not mean proof beyond all reasonable doubt.
Perhaps we should also mention that in Wilson v. Holly Sugar Corporation, 47 Wyo. 141, 33 P.2d 253, it was pointed out that the special provisions adopt the view of medical authorities that in most cases hernia is caused by malformation or inherent weakness in the abdominal wall and is a disease rather than the result of an accident.
After a careful analysis of the evidence we have concluded that the claimant has failed to meet his burden in at least two respects.
*323 We are referring primarily to the requirements relating to "pain" and to "accidental strain." As we view it, there is a direct and close relationship between the two provisions. In Colorado Fuel & Iron Corporation v. Frihauf, supra, and in most of the cases from other jurisdictions coming to our attention where a claim has been allowed under statutory provisions similar to ours  for example, see Morris v. Industrial Commission, 3 Ariz. App. 393, 414 P.2d 996; Consolidated Coal & Coke Co. v. Lazaroff, 109 Colo. 248, 124 P.2d 755; Larson v. State, 79 Idaho 446, 320 P.2d 763; Western Electric Co. v. Industrial Commission, 349 Ill. 139, 181 N.E. 638; Mulligan v. E. Keeler Co., 112 Pa.Super. 261, 170 A. 311; and Paristyle Beauty Salon, Inc. v. Chandler, 207 Tenn. 587, 341 S.W.2d 731  there was clear proof that the two elements were present. Usually it was "pain" that fixed in the mind of the employee the "accidental strain"  which has been defined as a strain that is unforeseen, unexpected, and unintended, Central Surety & Insurance Corporation v. Industrial Commission of Colorado, 84 Colo. 481, 271 P. 617, 619  that furnished the necessary causal connection between it and the injury resulting in hernia. Under the language of the provisions here, we do not say, of course, that the tests require simultaneous awareness of each, but certainly the rationale of the authorities mentioned readily comports with the view of the legislature at the time the provisions were adopted that "pain" would accompany a hernia of traumatic origin. It may well be, as claimant seems to suggest, that the provisions discussed are somewhat outmoded in a medical sense, in view of the testimony of Dr. Araas that pain may or may not be suffered at the time of "the heavy lifting that brought the hernia down." That, however, is a matter for the legislature to decide and not this court.
Here there is no evidence of pain. A "vague feeling of insecurity" insufficient in itself even to direct the attention of claimant to the "protrusion" or to cause "discomfort" in his work before and after such discovery does not, in our view, measure up to the standard required. Then there is claimant's own admission that he could not recall an instance of a strain of any kind in his work on July 20, 1966, the critical day. To excuse these apparent shortcomings in meeting the standards, claimant testified that he didn't "feel pain as such" and said his doctor had told him he had a "high pain threshold." What the doctor meant was not defined but, in any event, there is nothing to show that such condition was brought about by anything more than the fact that claimant probably had a greater degree of tolerance for pain than others might have. We attach little significance to this phenomenon for the reason that it cannot be assumed the legislature was unaware of such a rather common circumstance when it nevertheless required that pain had to be shown.
In this connection we would also point out what has heretofore been regarded by this court as a strong circumstance tending to show that claimant did not sustain a compensable injury and that was the fact claimant did not report the occurrence and nature of the injury of which he was aware within 24 hours as the statute, § 27-104, W.S. 1957, requires, or, in fact, voice any complaint or seek medical attention until he voluntarily terminated his employment. Wilson v. Holly Sugar Corporation, supra; Parkel v. Union Pac. Coal Co., 69 Wyo. 122, 237 P.2d 634, 635.
For the reasons stated we are constrained to hold that there was not sufficient evidence tending to establish by more than a preponderance that claimant had suffered a compensable injury and consequently the order of award must be reversed. However, as a matter of caution, we would add that the disposition made is not to be considered as any departure from the rule laid down in Colorado Fuel & Iron Corporation v. Frihauf, supra, 135 P.2d at 429, that a workman may incur a compensable hernia while doing *324 his work in his normal and regular way, "provided other conditions, requisite under the statute, exist." It was there recognized that the evidence must show "strain," but it was unnecessary to inquire into the extent of the strain for the reason that the testimony disclosed a causal relation between the injury and a specific instance of great physical effort to raise a 500-pound door.
Order of award reversed.