NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

ELSIE GOLUB, PETITIONER, v. LOBEL'S KIDDIE SHOP
AND AMERICAN INSURANCE CO., RESPONDENT.

Decided November 7, 1941.

For the petitioner, *Alexander Permison* (*David Roskein*, of counsel).

For the respondent, *Edwin J. O'Brien.*

*    *    *    *    *    *    *

The primary issue presented for determination is whether or not the petitioner's present disability, conceded by both sides to be total and permanent in character, is causally related to the compensable accident of February 25th, 1937. That the accident arose out of and in the course of the petitioner's employment with the respondent and other jurisdictional factors are admitted.

The testimony adduced before me discloses that on February 25th, 1937, the petitioner was employed by the respondent as a saleslady and that she had pursued this calling for some years prior thereto. It is significant that prior to the accident in question she was in an apparently sound physical condition and was able to satisfactorily perform the routine work required by her occupation. On the date aforesaid, and while descending a flight of stairs in the respondent's premises, she fell down and against the stairway and sustained injuries to her body, limbs and head of such a character that rendered her unable to continue with her work. The respondent referred her to Dr. Satulsky the same day, who examined and thereafter treated the petitioner until March 25th, 1937. This doctor found the patient to be suffering from an abrasion and discoloration of the left elbow, with marked pain on passive motion. She complained of severe headaches, pain over the thoracic and lumbar vertebrae, with tenderness on pressure and palpation and pains in her chest. She appeared to be considerably upset and shaken up and because of her extreme nervousness, crying spells and complaints of pain, the doctor ordered her to bed, prescribed an ice cap to her head and administered sedatives and bromides. The patient thereafter developed nausea, suffered from spots in front of her eyes, dizziness and continued to complain of pains in her chest and head. Her physician found the petitioner highly emotional, extremely hypersensitive and nervous, very tremulous and she cried frequently. Dr. Satulsky testified that during the course of his treatment, the petitioner did not manifest any diagnostic heart symptoms and that her heart on external physical examination, was negative, with the sound regular in rate and rhythm. This witness

described the petitioner as a large, obese woman, who exhibited an unstable emotional make-up, and an endocrine imbalance, which in his opinion had existed prior to the accident. He testified that the latter condition was demonstrated by her obesity, hirsutism, masculinity and stature. When he discharged the petitioner from active treatment, she still exhibited signs of emotional disturbance, even though the physical aspects of the injury to her elbow had cleared up.

On March 10th, 1937, within three weeks following the accident, and while the petitioner was still confined to her home, she was examined by the respondent's physician, Dr. Keller. At that time she manifested definite symptoms of a cardiac disorder, such as poor quality of heart sounds which were rapid and arithmic in character and exhibited an irregular rapid pulse. These, in the opinion of Dr. Keller, seemed to indicate a definite myocarditis with a cardiovascular disfunction.

Sometime thereafter the petitioner attempted to resume her employment, but she was only able to pursue same irregularly. Her condition, instead of improving, became worse and her symptoms increased in severity so that she was unable to continue with her full time employment and resorted to part time work. Eventually she was even compelled to terminate this type of employment. Her physical condition has progressively deteriorated and her symptoms become markedly increased and in an endeavor to obtain some relief or physical improvement, she has been confined to her home and to several hospitals under the care of numerous physicians. The petitioner is admittedly now totally disabled and unable to engage in any gainful occupation.

A survey of the entire testimony warrants a conclusion that the petitioner prior to the accident possessed an unstable, emotional system and an endocrine imbalance, which, while it rendered her potentially vulnerable to systemic shock or disturbance, did not prevent or interfere with her ability to satisfactorily and regularly perform the duties required of her employment. Nor did she, prior to the accident, appear to be disabled in the sense that term is employed in compensation litigation. The accidental fall down the stairway of

her employer's premises unquestionably resulted in not only external physical injuries to her body and limbs, but also caused a severe emotional upset, induced no doubt, by the shock resulting from said fall. It was of such severity as to necessitate her confinement to bed and home and manifested itself at once by extreme nervousness, tremulousness, frequent crying spells, dizziness, spots before her eyes and for a time completely prevented her from doing any work. Her attempt to resume her normal and regular employment was frustrated by the progressive character of the distressing symptoms which, from the evidence, clearly found their inception in the accident. There appears little dispute that after her fall she was disabled and deteriorated physically, notwithstanding the attendance and treatment of numerous doctors and several confinements to hospitals. I deem it significant that prior to the accident she appeared in good general physical condition, and was able to maintain herself normally while in the pursuit of routine daily activity. These circumstances, considering the intervention of the industrial accident, are entitled to great weight. *Davis* v. *Lotz,* 126 *N. J. L.* 615; 20 *Atl. Rep.* (*2d*) 602. That she is now completely incapacitated is not disputed even by the medical witnesses of the respondent.

It is the theory of the petitioner's case, and amply supported by the testimony of her treating physicians, that as a result of the accident, she suffered an emotional shock, which superimposed upon her underlying unstable emotional and glandular condition, resulted in the chain of symptoms and the physical condition which presently incapacitates her completely. From a consideration of all of the testimony adduced, I find that the petitioner has succeeded in establishing her contention by a preponderance of the credible testimony. Similar to the case at bar is the situation found in the recently decided case of *City of Paterson* v. *Smith,* 126 *N. J. L.* 571; 20 *Atl. Rep.* (*2d*) 323. There the Supreme Court affirmed an award for compensation to the petitioner, who previous to the accident had been suffering from an enlargement of the prostate gland and was not in good health by reason thereof. He suffered injuries to his back and groin

at a fire which he attended in the course of his duties, and was thereafter confined to a hospital for about two weeks and then returned to work in about two months. It became necessary while he was in the hospital to catherize him and the testimony disclosed that by that operation he became infected and thereby the prostate gland then became progressively worse, necessitating surgical treatment, following which he died. Mr. Justice Porter held:

"The rule is settled that where a pre-existing disease was caused to become acute or flare up and injury resulted therefrom rather than from the specific hurts received, the same is compensable. The proximate cause is the accident which set in motion the undeveloped or latent physical defect. Sound health at the time of the injury is not the test. *Furferi v. Pennsylvania Railroad Co.,* 117 *N. J. L.* 508; 189 *Atl. Rep.* 126."

The foregoing language, in my opinion, is dispositive of the respondent's position taken that the petitioner was suffering from this underlying condition prior to the accident. Such a contention is of no avail. Under our decisions, compensation is to be paid for the resultant disability which is induced or proximately caused by a compensable accident. This, notwithstanding the presence in the injured employee, of an underlying diseased condition. It is not essential, under our Workmen's Compensation Act, that the employee be in perfect physical condition prior to an accident. The employer takes his employees with their mental, emotional, glandular and other physical defects or instabilities. *Bernstein Furniture Co.* v. *Kelly,* 115 *N. J. L.* 500; 180 *Atl. Rep.* 832.

Here, the petitioner was able to carry out and perform her regular work prior to the accident. Her potential physical weakness or underlying instability was non-disabling until the accident activated or aggravated them following which she suffered a pronounced disablement. The proofs are convincing that the accident resulted not only in direct soft tissue or bony injury to the petitioner's body, but also contributed to the breakdown of her underlying potential vulnerable physiological make-up. The testimony of the petitioner's medical witnesses, Dr. Jacob Bleiberg, Dr. H. H.

Goldberg, Dr. Daniel R. Mishell and Dr. Nathan H. Ram, all physicians who had occasion to treat the petitioner at various times during her illness, was supported in some measure by the respondent's witnesses, and clearly indicates that the trauma of the accident was the precipitating cause of the petitioner's cardiac decomensation. This especially so, since the fall down the stairway was accompanied by shock and emotional upset. It requires no extended argument to establish that the petitioner, previously possessed of an imbalanced endocrine and emotional system, was more susceptible to the distressing effects of a trauma such as she suffered than a person free from such an underlying condition. Considering her vulnerability in this regard, the severity of the trauma inflicted upon her and the ensuing disability, the relationship of cause and effect is apparent. I find that the accident of February 25th, 1937, with its attendant shock and injury, superimposed on the petitioner's pre-existing unstable, emotional and endocrine disfunction, was the causative factor in the development of her symptoms and present disability.

The medical witnesses produced by the respondent attempt to attribute the petitioner's present disability to causes other than the accident. They charge her condition to: (a) a diphtheria suffered during childhood; (b) a progressive rheumatic heart disease and (c) an old thyroid condition. Undoubtedly these conditions played a part in the general physical make-up of the petitioner. However, a preponderance of the proofs clearly indicate that she suffered no disability prior to this accident by reason thereof, and was not impeded in the regular pursuit of her normal daily employment and routine activities. Dr. Frederick A. Alling, who specializes in internal medicine with particular reference to the heart and lungs, one of the respondent's experts, conceded that a shock following a trauma resulting in an emotional disturbance plays a considerable part in aggravating or activating an underlying endocrine or heart condition. Dr. Paul Keller, another medical witness of the respondent, admitted that the trauma resulting from the fall of the petitioner down a flight of steps may have influenced the acceleration or accen-

tuation of the symptoms referable to her already diseased heart. Dr. Leon Lewis, the third medical expert of the respondent, testified that it cannot be denied that a woman with a background such as the petitioner possessed, would be more susceptible to the effects of an injury such as she suffered and that certainly the injury played a part in the ultimate emotional disturbance suffered by the employee. Dr. Asher Yaguda, eminent pathologist in this community, also appeared on behalf of the respondent and testified following an examination made by him on behalf of the respondent and a hypothetical question in which were embodied the pertinent facts of this case. Although the doctor felt that there was no causal connection between the petitioner's present condition and her accident, he did, however, substantiate the generally accepted medical theory upon which the petitioner's case rested.

Where the employer seeks to attribute the disability of the injured employee to causes other than the accident, the burden of proof in that regard is on the employer. *Atchinson* v. *Colgate*, 102 *N. J. L.* 425; 131 *Atl. Rep.* 921. I find from a consideration of the testimony, that the respondent has failed to meet and carry that burden.

I therefore find and determine that the petitioner, Elsie Golub, on February 25th, 1937, suffered an accident which arose out of and in the course of her employment with the respondent, Lobel's Kiddie Shop, and that the injuries sustained resulted in a disability which is now concededly total in quality and permanent in character.  *  *  *

Upon the termination of compensation payments for disability as provided in this order petitioner is entitled to receive benefits under *N. J. S. A.* 34:15-12.

It is therefore,  *  *  *  determined and ordered that judgment be entered in favor of the petitioner and against the respondent.  ·  ·

\*      \*      \*      \*      \*      \*      \*

JOHN C. WEGNER,
*Deputy Commissioner.*