NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

HELEN DEHRENBACH, PETITIONER, v. NORTH JERSEY DISTRICT WATER SUPPLY COMMISSION, RESPONDENT.

Decided December 16, 1943.

For the petitioner, *Nathan Rabinowitz.*

For the respondent, *Reid, Kelly & Flaherty.*

This is a proceeding brought by the petitioner, Helen Dehrenbach, wife of Fred Dehrenbach, hereinafter referred to as

decedent, against North Jersey District Water Supply Commission, respondent, seeking compensation for herself as a dependent under and by virtue of the provisions of *R. S.* 34:15–1, *et seq.; N. J. S. A.* 34:15–1, *et seq.,* "prescribing the liability of an employer to make compensation for injuries received by an employee in the course of employment, establishing an elective schedule of compensation and regulating procedure for the determination of liability and compensation thereunder," together with the several acts amendatory thereof and supplemental thereto.

A dependent's claim petition and an answer thereto were duly filed with the secretary of the Workmen's Compensation Bureau at Trenton, New Jersey. In regular course the matter came on for formal hearing before me, John J. Stahl, a Deputy Commissioner of Compensation, at the chambers of the Workmen's Compensation Bureau, Paterson, New Jersey.

Upon the pleadings and the proofs adduced, the following facts were developed in the evidence: On November 18th, 1941, and for a long time prior thereto, petitioner's decedent was employed by the respondent as a guard in and about its Wanaque Reservoir, Wanaque, New Jersey, receiving for his said services wages at the rate of $30.77 per week. On the above day while so employed at or about three o'clock in the morning, while patrolling his post alone, decedent slipped on the grass and fell, striking his right groin and scrotum in the fall. At the time of the mishap, decedent was 69 years of age and had been wearing a truss for some years for the relief of a right inguinal hernia from which he was apparently suffering. He developed symptoms of the injury soon after the accident but, despite the pain and discomfort, he continued at work in the respondent's employ until December 2d, 1941.

Dr. James S. Stokes commenced treatment of decedent on December 4th, 1941, at his office and continued to see him subsequently at his home and finally at the Paterson General Hospital. Dr. Stokes received a history from decedent that on November 18th, 1941, while performing his duties as a guard, his feet slid from under him, he fell down, injuring his right groin and testicles. Later his right scrotum swelled

and he was in constant pain. On his first examination, Dr. Stokes found evidences of trauma to the right testicle, large hard swelling in the right scrotum, hydrocele, and a possible hernia. After several weeks of treatment and at Dr. Stokes' suggestion, Dr. Theodore Bender's advice was sought. He was examined by Dr. Bender, a surgeon of Paterson, at his office on December 19th, 1941, who was told by decedent that he had slipped and fallen, suffering an injury to the right testicle and grain, causing pain and discoloration in that area. Decedent also told Dr. Bender about a previous mishap which had occurred to him about ten years previously when he slipped and fell while carrying a quarter of beef and that he had been wearing a truss on his right side since then. There was no evidence, however, that he had received medical treatment for an inguinal condition prior to November 18th, 1941.

Decedent was admitted to the Paterson General Hospital on January 7th, 1942, and the hospital record, in evidence, under title "Chief Complaint: Date and Mode of Onset, Probable Cause, Course" reads as follows: "Slipped on an embankment on or about November 18 and fell down, injuring rt testicle and causing rt inguinal hernia and bruising scrotum and testes, accident about 3:00 A. M."

Dr. Bender performed an operation on decedent's right side at the hospital on January 9th, 1942, with Dr. Stokes assisting, for the correction of a right inguinal hernia (herniorraphy) and right hydrocele, but decedent died at the hospital on January 23d, 1942, from a post-operative pulmonary embolism.

Dr. Bender was of the opinion that the accident of November 18th, 1941, aggravated a pre-existing hernia and hydrocele, which opinion was also expressed by the physicians, Dr. Samuel Kleiner and Dr. Alvin E. Cortese, the latter two testifying hypothetically. It appeared from the testimony of Dr. Stokes, now in the armed services, as disclosed by interrogatories and cross-interrogatories propounded of him, that there was evidence of recent trauma to the right testicle at the date of his first examination on December 4th, 1941.

Petitioner testified that decedent's working hours, as guard for respondent, were between 12:00 midnight and 8:00 A. M., that up to the time of the accident he drove his automobile to and from his work each day, and upon his return from work on the morning of November 19th, 1941, saw decedent in pain, and upon examination, found that the scrotum was swollen. After Dr. Stokes' examination, she applied ice packs to the injured parts upon his advice. She testified that decedent did not work the day after the accident, although he received his full wages for that day. Petitioner further testified that decedent showed no evidence of suffering from acute symptoms prior to November 18th, 1941, and was apparently able to perform his daily work and other normal activities in comfort, but that from the time of his return home after working that day, he manifested acute pain and disability in the region of the right groin which continued to the time of operation.

*Exhibit P-1* in evidence was a letter written by the assistant to counsel of the respondent to attorneys for petitioner, dated June 21st, 1943, in reply to an inquiry by said attorneys, in which letter it was stated that respondent's records show that on November 18th, 1941, "this man, while patrolling the area, slipped and fell down on the grass." *Exhibit P-5* in evidence was a copy of the first formal notice of accident prepared on December 5th, 1941, by Helen M. McGurk, an employee of respondent, in which it was stated in answer to question No. 2, "Exact part of person injured with nature and extent of injury." Answer: "Pain around the groin, possibility of hernia," that the probable period of disability was at least two weeks, that medical attention was necessary, and that the attending physician was Dr. James S. Stokes.

Dr. Bender testified that deceased was recovering from the aforementioned operation that he had performed on January 9th, 1942, and was about to be discharged from the hospital when he suddenly developed a pulmonary embolism on January 23d, 1942, as a result of which he died on that day. It was Dr. Bender's opinion that the embolism causing death was a sequence and unavoidable complication of the surgical operation performed upon decedent and was directly related

thereto. The same opinion was expressed by Dr. Samuel Kleiner, testifying for petitioner, who likewise stated that there was a direct causal relationship between the operation, the development of the embolism and the death. Dr. Alvin E. Cortese, on behalf of petitioner, also testified to the same effect.

Dr. Joseph F. A. Rubacky, appearing as an expert on behalf of respondent, testified that he interviewed decedent at the hospital on January 22d, 1942, and that decedent told him that he had injured himself on November 18th, 1941, when he fell while walking in the course of his employment with respondent. It was his opinion, however, that the accident did not contribute to decedent's death, that in the absence of an autopsy he would not say that death was due to a pulmonary embolism, and that, in his opinion, the death was most likely due to a disease of the heart, known as myo-cardial infarct, resulting from a septic poisoning which decedent had suffered from many years ago. Dr. Rubacky agreed that trauma might aggravate an old pre-existing hernia, such as decedent had apparently been suffering from prior to the accident, and that a pulmonary embolism may follow and result from an operation performed for the relief of such a condition. However, it was his opinion that such an embolism would result from such operation only within a period of ten days thereafter, and that fifteen days following the operation was too long a period of time to warrant the inference that the embolism which then developed was due to the operation. Dr. Rubacky further testified that he had called upon Dr. Bender at his office on March 5th, 1942, and was told about decedent's accident of many years ago when he injured his right side as a result of lifting a quarter of beef and that he had worn a truss ever since, but that Dr. Bender stated in answer to his inquiry that he had received no history of an accident occurring on November 18th, 1941. It was stipulated by counsel for both sides that Dr. Anthony Watman, a practicing physician of New Jersey, would testify similarly to that of Dr. Rubacky on behalf of respondent.

There was also introduced into evidence, at petitioner's instance, certified transcripts of two official death records

made by Dr. Bender and filed with the Bureau of Vital Statistics in Paterson. In the original certificate of death filed by him, Dr. Bender had certified, in answer to the question "Cause of Death" that the cause of death was "embolism, pulmonary, post-operative after herniaplasty," but, in accordance with the statutory permission to do so, as provided by *R. S.* 26:8–52; *N. J. S. A.* 26:8–52, he had filed an amended certificate of death amending the answer to the question to read, in addition to the foregoing, "slipped on an embankment on or about Nov. 18, 1941, and fell down, injuring rt. testicle and causing rt. inguinal hernia and bruising scrotum and testes—accident about 3 A. M." Pursuant to the statute, certificates of death are *prima facie* evidence of the facts therein contained. *R. S.* 2:98–14; *N. J. S. A.* 2:98–14. The hospital record heretofore mentioned also seems to be competent proof. *Opdyke* v. *Halbach,* 123 *N. J. L.* 123; *7 Atl. Rep.* (*2d*) 635.

After carefully considering all the competent evidence, I find that decedent suffered an accident by falling on November 18th, 1941, while in respondent's employ as a guard doing patrol work, which accident arose out of and in the course of his employment. The development of new, immediate symptoms in decedent's right side thereafter leads me to the conclusion that he suffered aggravating injuries in that region and that they were directly, naturally, and probably the result of that accident. While there is a difference of views between the medical witnesses produced by petitioner and respondent, yet where injuries are so immediately and directly, or naturally and probably the result of an accident, we are not required to depend alone upon medical testimony to find a causal connection. And when, as here, the course of events is considered in connection with the preponderating medical testimony, particularly the testimony of the two attending physicians, Drs. Stokes and Bender, there is no question, and I so find, that the accident aggravated the pre-existing condition, which aggravation so superimposed upon said pre-existing condition, finally made necessary the operation of January 9th, 1942, and that as a direct and unavoidable result of the surgery performed upon him on

that date, decedent developed a pulmonary embolism, from which he died on January 23d, 1942. Decedent's death had its origin primarily in the injury sustained on November 18th, 1941. *Furferi* v. *Pennsylvania Railroad Co.,* 117 *N. J. L.* 508; 189 *Atl. Rep.* 126.

I therefore find and determine as follows:

1. That decedent was regularly employed by the respondent as a guard, and as such, his said employment was subject to article II of the Workmen's Compensation Act, *N. J. S. A.* 34:15–7, *et seq.*

2. That decedent received wages in the amount of $30.77 per week.

3. That on November 18th, 1941, decedent suffered an injury as the result of an accident arising out of and in the course of his employment.

4. That respondent had notice of the said accident and injury.

5. That as a result of said injury, decedent suffered an aggravation of a pre-existing inguinal and testicular condition, as a result of which a surgical operation was performed upon him for the relief of the same on January 9th, 1942, and that as a consequence of said surgical operation, decedent developed a pulmonary embolism, causing his death on January 23d, 1942.

6. That decedent left surviving him, petitioner, his widow, as his only and total dependent, with whom he lived at the time of said accident.

7. I find, therefore, that petitioner is entitled to an award of compensation as a total dependent of decedent for a period of 300 weeks at the rate of $10.77 per week, payments to begin as of January 23d, 1942, and in addition thereto, the sum of $150 for statutory burial allowance.

8. I further find that the bill of the Paterson General Hospital, in the sum of $108.15 shall be paid by respondent for hospital services rendered decedent.

9. I further find that Dr. Theodore Bender shall be paid the sum of $100 for professional medical services rendered decedent, payable by respondent.

10. I further find that Dr. Samuel Kleiner and Dr. Alvin

E. Cortese, who testified as medical experts for petitioner, shall each be paid the sum of $35, payable $17.50 by petitioner and $17.50 by respondent for such testimony, and that Dr. Theodore Bender who testified on behalf of petitioner shall be paid the sum of $35, payable $17.50 by respondent and $17.50 by petitioner.

11. I further find that petitioner's attorney, Nathan Rabinowitz, shall be paid a counsel fee for services rendered on petitioner's behalf in the sum of $650, payable in the following manner, that is to say, $325 by respondent and $325 by petitioner, and that stenographic fees in the sum of $40 shall be paid by respondent.

It is, therefore, * * * ordered that judgment final be entered in favor of the petitioner and against the respondent.

*       *       *       *       *       *       *

JOHN J. STAHL,
*Deputy Commissioner.*