EUGENE McNABOE, PETITIONER-APPELLANT, v. GENERAL MOTORS CORPORATION, HYATT BEARINGS DIVISION, RESPONDENT-APPELLEE.

Decided May 27, 1946.

For the petitioner-appellant, *Rothbard, Harris & Oxfeld.*

For the respondent-appellee, *Carpenter, Gilmour & Dwyer.*

DREWEN, C. P. J.   Claim petition was filed in the Bureau for an award to cover what is described in the petition as "compensable left hernia; aggravation of pre-existing right hernia; injuries to body and internal injuries." The evidence confines the injury to a left inguinal hernia.

The case comes within the provisions of *R. S.* 34:15–12, ¶ X; *N. J. S. A.* 34:15–12, ¶ X. The hernia was not shown to be "a real traumatic hernia" as described in the statute and it therefore must comport with the five prescribed tests prerequisite to recovering.

The claim petition was dismissed below. The ground of dismissal is set forth in the findings of fact and determination as follows:

. "Upon consideration of all the testimony in this case I conclude that the case is not compensable. The petitioner has failed to prove that he was in such physical distress by reason of a hernia that the attendance of a licensed physician was required within twenty-four hours of the occurrence of the hernia. In fact, there is no evidence of any immediate descent."

The latter reference to proof of immediate descent was later deleted by an amending order of the Deputy Commissioner. As we judge the case, there was no reason whatever for dismissing the claim petition, and every reason for sustaining it as a claim for a left inguinal hernia.

The case presents a body of fact at once decisive and undisputed. On January 13th, 1945, petitioner was loading a hand-truck with fifty bags of sand. In the history given by him to his physician Dr. Block, this work is shown to have involved the lifting of as much as 100 pounds. Having loaded the truck he was in the act of pulling it to an elevator when he was seized with a violent pain in the left groin; immediately he sat down for about ten minutes because he could not stand the pain. Thereupon, it being lunch-time, he went to a restaurant, had lunch and returned. He then went to the storeroom where he had a little work to do, as he states it, and soon thereafter while thus engaged he fainted. He was taken to the first aid room on a stretcher. He was there under the care and observation of one or more nurses while awaiting the arrival of the plant physician, Dr. Paul. Petitioner states that after getting from him a statement of the occurrence, Dr. Paul "looked him over" and sent him back to the floor to work. Dr. Paul states that an examination then made by him showed that the rings were large on both sides and that there was a protrusion on both sides when petitioner stood up; that petitioner said he felt all right and wished to return to work, which the doctor allowed, telling petitioner not to do any heavy pulling or lifting. It appears further upon petitioner's arrival in the plant infirmary he was observed to have a large mass protruding from the left groin, all of which was reported by the nurses to Dr. Paul. Dr. Paul suggested that petitioner procure a truss, which he

subsequently did through his own physician, Dr. Block. Upon his arriving at home in the evening petitioner noticed a lump in his left groin. Two days later, January 15th (the intervening day being a Sunday), petitioner returned to Dr. Paul, who then observed that petitioner had a large protrusion in the left groin, "a definite mass," which the doctor characterized as reducible. It was quite apparent to the doctor, he says, that petitioner had a hernia. At no time did Dr. Paul treat petitioner, but after the examination of January 15th he referred him to his own physician. Petitioner then placed himself in the hands of Dr. Block, who administered injections, giving ten treatments in all. Dr. Block first saw petitioner on January 19th, when petitioner gave him a history that conforms with his testimony. Dr. Block found a left inguinal hernia. His treatment continued from January 19th, 1945, until he discharged the patient as cured on May 28th following. It was Dr. Block's hypothesis that the incident of the described lifting "probably pushed it out."

It is our judgment that beyond question the five statutory tests are met. The first of these is the requirement that the descent of the hernia immediately follow the cause. Not only is there the evidence of protrusion at the time of the first examination by Dr. Paul in the infirmary on the day of the accident, but there is also the finding of the lump by the petitioner himself the same evening. Protrusion is the manifestation of descent. The question of the immediacy of descent was dealt with by the Supreme Court in *McBride Co., Inc.,* v. *Kuehn,* 11 *N. J. Mis. R.* 764; 168 *Atl. Rep.* 64, following the principle enunciated in *Borodaeff* v. *Province Line Dairy, Inc.,* 109 *N. J. L.* 25; 160 *Atl. Rep.* 513; *affirmed,* 110 *N. J. L.* 20; 163 *Atl. Rep.* 892. In the latter case the descent was noticed the morning after the strain, eighteen hours later. It was held that the phrase "immediately following the cause" means "soon enough and in such manner as to make it appear clear that the descent was the effect of the strain and pain complained of which forced cessation of work." The present case is undeniably within that rule.

The second prerequisite is that of severe pain in the hernial region. Concerning this no issue is presented. In addition to the uncontradicted testimony, respondent's pleaded defense postulates the pain, but ascribes it to a pre-existing hernia.

The third prerequisite is that of such prostration that the employee was compelled to cease work immediately. Here also the testimony is clear and undisputed. January 13th, 1945, the date of the injury, was a Saturday. Cessation of work was immediate upon the incurring of the strain and an attempt to resume work on that day proved impossible. Cessation of work continued until May 17th.

The fourth condition, which relates to the communication of the injury to the employer within twenty-four hours after the occurrence of the hernia, requires no discussion.

The fifth and last is that there be such physical distress as to require the attendance of a licensed physician within twenty-four hours after the occurrence of the hernia. We hold this condition was fully complied with by the attendance of Dr. Paul upon petitioner at the plant infirmary soon after the injury. In the briefs of counsel, controversy centers in the failure of Dr. Paul during his attendance on January 13th to administer treatment. The case of *Black* v. *DeVries,* 133 *N. J. L.* 368; 44 *Atl. Rep.* (*2d*) 386, is cited, in which the workman was not seen by a physician until about two weeks after the accident. The court held this defeated the claim under the statutory requirement. But the decision deals only with the difference between mere physical attendance by a physician and no attendance at all. The court does not probe the question beyond this to find the underlying meaning of the term used. In the instant case there was attendance by a physician, who was given the workman's report of the happening, made such examination as he deemed needful or proper at the time and who, upon the workman's expressed wish to return to work, permitted him to do so, at the same time enjoining him against any but light effort.

We think that the attendance in the present case was attendance in the sense required by the statute. The fact that no treatment was actually administered cannot be permitted to annul the attendance. The workman told his story, revealed

his symptoms and submitted himself to examination. The patient can do no more. To hold him accountable beyond this for the physician's failure to offer or to administer specific treatment would in effect render the workman accountable for the physician's diagnostic error or other professional incompetence or neglect.

The proofs before us have a double aspect. Conceivably the claim can, within the frame of the law and for the reasons hereinabove set out, be regarded as one for an original hernia; and at the same time as one for the aggravation of a pre-existing hernia. *Furferi* v. *Pennsylvania Railroad,* 117 *N. J. L.* 508; 189 *Atl. Rep.* 126. Petitioner entered the employ of respondent on August 10th, 1943, when he was given a pre-employment examination by respondent's physician, the already mentioned Dr. Paul. This examination revealed large rings and protrusion in both groins. The doctor testified that he passed him for "average work," whatever that may mean. The condition then found is characterized by the doctor as "incipient hernia" and the testimony is that it was such as to render the subject more than ordinarily susceptible to hernia from sudden strain or effort.

Respondent-appellee urges that the establishment of petitioner's claim is defeated by such things as the statement to the doctor, ascribed to petitioner but denied by him, that his pain was caused by the inclusion of pie in the luncheon menu; the variance presented by the allegation in the claim petition of a compensable *left* hernia and the aggravation of a pre-existing *right* hernia, the evidence showing only a left hernia, either aggravated or original; and the testimony of petitioner that he had never had any prior trouble in either groin, notwithstanding Dr. Paul's finding in the pre-employment examination of 1943. We regard all this as trifling. If there is any justification for our noticing these contentions at all it is in the seriousness with which they are urged. Concerning the so-called variance, what we are asked to do is to overcome the substance with the form. Whatever inaccuracy there is in the claim petition in this regard worked no prejudice to anyone save possibly to petitioner himself in the hearing of his cause. That respondent was not prejudiced is perfectly

clear from the stipulation dictated into the record by respondent's attorney at the start of the hearing: "Petitioner informed respondent he had pre-existing left inguinal hernia. Respondent contends no additional disability to either inguinal region." And respondent had too the record of the pre-employment examination. To give the least effect to anything petitioner may have said concerning a relation between the pie and the pain would by so much render him the only accountable aetiologist on the scene. He would not be permitted to pronounce conclusions on the hernial origin of his pain, nor will he be permitted to conclude the contrary. All denial by petitioner of previous inguinal difficulty must be considered in the light of the fact that for all that appears he was not told of his predisposing weakness, he did not know of it; and we are given no reason for saying he should have known of it, prior to the strain of January 13th, 1945. And finally, he did not deny actual awareness. All he said is that he had no previous pain or difficulty there.

The determination of dismissal in the Workmen's Compensation Bureau is reversed.