## Stearns Coal & Lumber Co. v. Duncan et al.

(Decided March 12, 1935.)

. TYE, SILER, GILLIS & SILER for appellant.

G. W. HATFIELD for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

While at work for the Stearns Coal & Lumber Company in its mine No. 4 at Worley, Ky., on December 5, 1932, Emanuel Duncan claims to have sustained an accidental injury which resulted in hernia. On July 10, 1933, he filed his application with the Workmen's Compensation Board for an adjustment of compensation, and on a hearing of his application was awarded compensation in the sum of $11.70 per week for a period of 300 weeks beginning December 12, 1932, with interest on past-due payments. It was provided, however, that the recovery in no event shall exceed $4,000 in all, and that the Stearns Coal & Lumber Company would take credit by $80 theretofore paid to him.

appeal to the circuit court of McCreary county, the judgment and award of the Compensation Board was approved and affirmed, and the Stearns Coal & Lumber Company is prosecuting this appeal.

As grounds for reversal it is argued, in substance:

(1) That it was not definitely proven that appellee suffered an injury resulting in hernia and that the hernia appeared suddenly and immediately following the accident and did not exist in any degree prior to the injury; (2) that the total award amounting to $3,510 is equivalent to 90 per cent. total and permanent disability based upon appellee's average weekly wage, and there is no evidence to show such per cent. of disability.

It is stipulated that the parties had elected to and were working under the provisions of the Workmen's Compensation Act, and that appellee's average weekly wages were $18.

According to the evidence, appellee worked on a night shift, and the accident occurred about 1 or 1:30 a. m. Appellee testified that he and his "buddy," Taft Roundtree, had loaded a mine car with coal and were attempting to move it; that he had a shoulder against the car and had hold of the ties with his hands with his foot against another tie; that the tie against which he was pushing with his foot kicked out and he fell against the rail; that all he could do was roll over on or near the track and Roundtree scotched the car to keep it from rolling back on him. He suffered intense pain, became very sick, and in about 5 minutes began vomiting. He immediately put his hand down to his left side about the groin and felt a lump or protrusion. He told Roundtree where he was hurt, and showed him the place. Roundtree, a brother-in-law of appellee, corroborated him in all material details concerning the accident and resultant injury. He testified that Roundtree went after the night foreman, Ned Duncan, and notified him of the accident; that he suggested that some one take appellee outside; however, appellee testified that he waited until Roundtree cleaned up the place where they were working and did not get started out until about 4:30; that with the assistance of Roundtree he walked to the man trip, a distance of about half a mile, and that he there saw Ned Duncan and told him he had hurt his side. He rode outside the mine, then walked something like a half mile up a steep hill to an automobile. He stated that he called for Dr. R. M. Smith, physician for the coal company on the 6th, 7th, and 8th, and requested the parties to call the doctor and tell him what the trouble was, but that he refused to come, and on the next day his mother took him to

see Dr. Smith. They both testified that the doctor told him he had a hernia and advised him to lie on his back. Appellee testified that he returned and did light work, trapping, mucking track, cleaning switches, etc., at reduced wages at the mine from December 28 until May 9, following, when he was laid off; that the superintendent told him to take his time and only work as he felt able. He testified that at the time of the hearing he was not able to do any kind of work and had not been for some time, and that he suffered continual pain. He further testified that prior to the accident he had been a healthy man and had no indications of rupture or hernia. Roundtree testified that he was with appellee when he bathed and dressed after coming out of the mine and had an opportunity to and would have seen any rupture or hernia if appellee had had one, but that he noticed nothing of that character. Appellee's mother testified that he had no indications of hernia in his childhood, and she knew of no such trouble until after the accident. Drs. Cain and Harmon testified that they had examined appellee subsequent to the accident and prior to the hearing and found that he had a rupture or hernia in the left side. Dr. Cain testified positively that appellee was not able to do hard work or to do anything that would cause a strain or exertion.

Ned Duncan, the night foreman, denied that he received any notice on December 5 that appellee had sustained an injury. On the other hand, he testified that on that date he suspended him for three days for violation of rules in not setting a safety post, and that appellee asked him to release him from the suspension. Appellee admitted that the night foreman spoke to him about the suspension at the man trip, but that this was after the foreman had been notified of his injury. Dr. Shultz testified that Dr. Rogers brought appellee to a hospital in Middlesboro in 1930 for an appendicitis operation, and that he performed the operation on May 26th; that he found the abdominal walls abnormally thin, and after removing the appendix he stitched the right side. He gave as his opinion that the condition was congenital. Dr. Rogers testified to the same effect, and, further, that he examined appellee after he came back from the hospital and found a little bulge in his side, and that his record shows hernia on the right side. Dr. Rogers admitted on cross-examination that on Jan-

uary 3, 1934, he gave appellee a statement, "To Whom it may concern," to the effect that he had examined appellee for work in the coal mines in 1929 and found him to be O. K. and in fine health, and he was operated on for appendicitis in 1930; that the operation was very successful, and he again examined him before he went to work after the operation and found him to be all right. Alvis Davenport, the day foreman, and Lee Thomas, superintendent of the mine, both testified that appellee came to them and asked them to relieve him of the three-day suspension which had been placed upon him by the night foreman, but that they refused his request; that he said nothing to them about the injury, and they had no notice of it for four or five days.

As a basis for the first ground for reversal, counsel for appellant rely on the provisions of section 4884, Kentucky Statutes, the pertinent part of which reads:

"In all claims for hernia resulting from injury received in the course of and resulting from the employee's employment it must be definitely proved to the satisfaction of the board: One. That there was an injury resulting in hernia. Two. That the hernia appeared suddenly and immediately following the injury. Three. That the hernia did not exist in any degree prior to the injury for which compensation is claimed."

There is positive and direct evidence that appellee sustained an injury at the time and in the manner described by him, and the only evidence to the contrary is that of witnesses for appellant concerning his acts and conduct thereafter. There is also positive evidence that when he received the injury to his left side the hernia appeared suddenly and immediately thereafter. There is a conflict in evidence as to whether his trouble was congenital. Some of the doctors gave as their positive opinion that it was not. While Dr. Shultz and Dr. Rogers are positive in their statements that the muscles of the abdominal walls were unusually weak and thin, there is much, if not a preponderating weight of evidence, indicating that there was no rupture or hernia indicated by a protrusion or knot on the side until after the accident.

Concerning the second ground, it may be said that while none of the physicians attempted to give definite

figures respecting the per cent. of the disability, there is evidence of a substantive and probative value indicating that appellee is, to all intents and purposes, totally disabled.

Neither the circuit court nor the Court of Appeals is authorized to set aside or disturb a finding of the Compensation Board which is sustained by competent and relevant evidence, notwithstanding the evidence may be conflicting and contradictory. Edgewater Coal Company v. Ramey, 235 Ky. 703, 32 S. W. (2d) 56; Fordson Coal Company v. Bledsoe, 236 Ky. 409, 33 S. W. (2d) 302; Mary Helen Coal Corporation v. Hooker, 237 Ky. 346, 35 S. W. (2d) 535; Mary Helen Coal Corporation v. Hensley, 237 Ky. 348, 35 S. W. (2d) 533, 534. In the latter case, appellee claims to have suffered a rupture while at work in a coal mine. In the course of the opinion it was said:

"The surgical evidence submitted by the appellant and other circumstances tend strongly to prove that the rupture was an old one and was not suffered as appellee claims. But the case is not to be determined by what the circuit judge or the members of this court should or would hold if the case were submitted as an original proposition. It is to be determined by the standard oft repeated that, if there was any credible evidence supporting the award of the Compensation Board, the award must be approved."

See, also, Black Mountain Corporation v. Murphy, 218 Ky. 40, 290 S. W. 1036; Harlan Wallins Coal Corporation v. Carr, 220 Ky. 785, 295 S. W. 1017; Huff v. Kentucky Harlan Coal Company, 224 Ky. 803, 7 S. W. (2d) 227, where the same rule was applied in cases of this character.

Considering the evidence in the light of these authorities, it is at once apparent that there was sufficient evidence to sustain the Compensation Board's finding.

Judgment affirmed.