## American Rolling Mill Co. v. Leslie et al.

May 10, 1946.

Caldwell & Gray for appellant.

David Browning for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Affirming.

It is declared in our Workmen's Compensation statute, KRS 342.025, that three elements must be definitely proved to sustain a claim for compensation for a hernia, namely:

"(a) There was an injury resulting in hernia;

"(b) The hernia appeared suddenly and immediately following the injury; and

"(c) The hernia did not exist in any degree prior to the injury for which compensation is claimed."

In the present case it was proved that W. L. Leslie, while at work for the American Rolling Mill Company on July 23, 1944, fell and struck the lower part of his abdomen on the edge of a step. He suffered great pain at that point for perhaps two hours but continued his day's work. The pain recurred intermittently for a few days and his doctor found that he had a hernia. He was sent to Dr. Rice, chief surgeon for the company, who made the same diagnosis and advised an operation. Leslie was operated on by Dr. Marting, another company surgeon. The Board made an appropriate award for lost time and expenses. The circuit court confirmed it. These facts are not disputed nor is the amount considered erroneous; but it is claimed by the appellant that the injury is not compensable because the employee did not establish freedom from a pre-existing degree of hernia in accordance with the requirement of clause (c) quoted above.

Dr. Rice testified that his profession recognizes a "primary inguinal hernia," or what he calls "open rings," as a weakness in the lower abdominal wall. That condition may progress to complete hernia, in which there is a break-through and protrusion, such as this employee suffered following the accident. A "primary hernia" is a degree of hernia that rarely becomes complete through violence and a majority of these cases progress naturally and become complete without trauma or injury. The existence of the incipient condition is usually not known to the individual, for there is no exterior evidence of it, and so long as that condition remains undeveloped it gives no pain.

Leslie had been employed by this company for seventeen years, except one year in the earlier part of the period when he worked elsewhere. He had never experienced any pain indicative of physical disorder. Indeed, he had always been a healthy man and had lost no time on account of ill health or infirmity. But Dr. Rice testified that Leslie had been sent to him for an examination by the superintendent on August 2, 1940, and that he had made a record that Leslie had a primary

inguinal hernia at that time. In response to a question as to whether he then told Leslie of his condition, Dr. Rice related that he had made a routine exterior examination; and further, "I expect I put my finger up in the channel, possibly two inches," which would be how he determined the classification. He was confident that he had told Leslie of his condition, "because when the boys have that condition present I always tell them; from three to six thousand times a year do I make that examination." However, Leslie was emphatic that the doctor had not made any such character of examination and had not advised him of any such condition. Dr. Marting, who performed the operation, testified that he found no indication of a previous rupture and that an incomplete hernia can apparently heal. He expressed the opinion that without any history or exterior signs, except a bulge, it is impossible to tell whether or not there is or has been a primary hernia which had healed and recurred.

In the absence of further professional definitions or descriptions of hernia, the Referee, for his opinion, resorted to both a general and a medical dictionary which defined a hernia, in brief, to be a protrusion. The appellant complains of this and quotes from two recent medical authorities describing the advancement in knowledge of such condition, and the conclusion, "that practically all hernias are of congenital origin, due to this open pouch or peritoneum, which has existed since birth."

We are quite sure that it was never intended that clause (c) of KRS 342.025 above quoted, concerning a pre-existing degree of hernia, should be given such a narrow and extreme meaning as to embrace a congenital weakness, otherwise a mere pre-disposition would bar compensation and this would practically deny it altogether. We think the provision means that there must have been some definite provable pre-existing degree of hernia, which was merely brought into the open by the accident. This would be proof that the man was already ruptured. A potential hernia or a pre-disposition to such an infirmity or a certain lack of physical integrity or strength not amounting to a degree of hernia is not enough to deny compensation. Physical weakness is not an ailment or degree of disability; it may be normal. In the absence of a disturbance of some sort a man goes

through life without experiencing any inconvenience from a congenital or the apparently common condition described. Without the accident in this case, there would have been no disability. See Annotations, 19 A. L. R. 102; 60 A. L. R. 1309.

The statutes of several states prescribe as a condition of recovery of compensation for a hernia that it must be shown that the hernia did not exist prior to the time of the injury for which compensation is claimed. The classification "in any degree" seems to be rare. In construing such statutes it has been said several times by the courts that it would be assumed the legislature had in mind the customary definition of hernia in terms of a protrusion. Lewis v. American Surety Company, 143 Tex. 286, 184 S. W. 2d 137; In re Frihauf, 58 Wyo. 479, 135 P. 2d 427. Those statutes are usually construed as denying compensation where there was only an aggravation or completion of a pre-existing condition of hernia by the industrial injury. Otherwise, say the courts, the provision would be ignored and claims for hernia be placed in the same position as other compensable claims. Mirific Products Company v. Industrial Commission, 356 Ill. 645, 191 N. E. 203; Aniel v. State Compensation Commission, 112 W. Va. 645, 166 S. E. 366; Jordan v. State Compensation Commission, 120 W. Va. 142, 197 S. E. 20; Matthews v. Hardaway Contracting Company, 179 Tenn. 98, 163 S. W. 2d 59. In those cases the pre-existence of a hernia was definitely proved. But in Furferi v. Pennsylvania Railroad Company, 117 N. J. L. 508, 189 A. 126, 130, compensation was allowed under a similar statute where there had been a pre-existing hernia. The court took note of its settled rule in aid of interpretation that as the Compensation Act is grounded in social and economic considerations, it is to be liberally construed to effectuate the general legislative policy. The court observed that the special provision as to hernia is in the nature of an exception and by the same token is to be strictly construed, and that, "A case not within its precise letter is to be excluded."

In Dixon v. Norfolk Shipbuilding & Dry Dock Corporation, 182 Va. 185, 28 S. E. 2d 617, it was held that where the evidence was conclusive that claimant's hernia was caused by exertion in performing his work, he was entitled to compensation under a similar provision as to the non-existence of previous hernia. In that case

a doctor testified rather indefinitely that the claimant had ''relaxed rings,'' which condition is comparable to Dr. Rice's record in this case of the claimant having had ''open rings.'' And in re Frihauf, supra, it was held that the fact that the employee's hernia was congenital in origin did not preclude him from recovering compensation where the protrusion was the result of an accidental injury sustained while working.

In the present case we have a man who had been performing manual labor throughout the four years intervening since the doctor stated he found a ''primary hernia'' or ''open rings,'' until he suffered violence at the point where a protrusion the size of a walnut developed. Dr. Rice relied upon a record and apparently had no definite memory of the examination. The patient denied that he made such an examination. The operating surgeon found no indication of any degree of hernia other than that for which he operated. He told the Board that a person may have an incipient or primary degree of hernia and then have it healed. Certainly, the court cannot say as a matter of law that the claimant failed to prove to the satisfaction of the Board that the hernia caused by this accident did not exist in any degree prior to this injury. Hay v. Swiss Oil Company, 249 Ky. 165, 60 S. W. 2d 385; Stearns Coal & Lumber Co. v. Duncan, 258 Ky. 346, 80 S. W. 2d 4. There was evidence to support the finding of the Board on a matter of fact.

The judgment is affirmed.