## Owensboro Wagon Co. v. Adams et al.

February 4, 1949.

Byron, Sandidge & Holbrook and Ridley M. Sandidge for appellant.

Claude E. Smith for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Ernest M. Adams, an employee of the Owensboro Wagon Company, filed his application with the Workmen's Compensation Board on July 10, 1946, for compensation for an injury received in the course of his employment. He stated in his application that the injury occurred on February 19, 1946, and resulted in an inguinal hernia. The referee to whom the case was referred made an award subject to the approval of the Board on July 15, 1947. He found that the claimant had received an injury in the course of his employment, and as a result of the injury had suffered a hernia. He also found that the claimant was then and, at all times since the date of the injury, had been permanently and totally disabled from performing the same kind of manual labor that he performed prior to the date of the injury. He awarded the claimant compensation at the rate of $15 a week, beginning February 19, 1946, and continuing for a period of ten years, not to exceed the amount of $7,500, or until the termination of the disability. In a full Board review, the Workmen's Compensation Board found that the claimant received an injury on February 19, 1946, in an accident growing out of and in the course of his employment, and that as a result of the injury he suffered a hernia which appeared suddenly and immediately following the injury. The Board also found that the hernia did not exist in any degree prior to the injury, and that the claimant had been totally disabled as a result of the injury from the date thereof to the date of the Board's award, which was September 2, 1947, more than eighteen months after the injury. In its opinion, the Board said: "In view of the evidence, however, and the common knowledge that disability usually does not continue permanently from a hernia where that hernia has been successfully repaired, the Referee may be in error as to total permanent dis-

ability for the future. This plantiff was operated on promptly after the hernia occurred. One year and a half has intervened since the date of the injury. It is the opinion of the Board, therefore, that this plaintiff should be required to present himself to a disinterested physician, appointed by the Board, for the purpose of being examined and that physician determining whether disability continues or just what the physical condition of the plaintiff now is as a result of the injury."

In its award the Board directed that the payment of $15 a week should continue until "such time in the future as the plaintiff shall present himself to Dr. J. H. Harrison, Masonic Building, Owensboro, Kentucky, a disinterested physician, who is hereby directed to be appointed by the secretary of the Board for the purpose of examining the plaintiff and determining what, if any disability he now has a result of the injury sustained." The Company filed a petition for review in the Daviess Circuit Court on September 19, 1947, and the Circuit Court affirmed the award of the Board. The Company appeals.

Appellant insists that the award is not supported by any substantial evidence of injury or any substantial evidence that the hernia did not exist in any degree prior to the injury. Subsection (1) of section 342.025, KRS, 1946 Edition, which was the law on the subject when the injury was received, reads:

"(1) In all claims for hernia resulting from injury received in the course of and resulting from the employe's employment it must be definitely proved to the satisfaction of the board that:

"(a) There was an injury resulting in hernia;
"(b) The hernia appeared suddenly and immediately following the injury; and

"(c) The hernia did not exist in any degree prior to the injury for which compensation is claimed."

Paragraph (c) was amended by Chapter 64 of the Acts of 1948 by the insertion of the words: "Including the primary or incomplete state" after the words "the hernia did not exist in any degree."

Claimant testified that on February 19, 1946, he was

engaged in operating a machine which performed the function of putting rims on the wagon wheels. The hubs and spokes were placed upon a platform, which was about 36 inches from the floor, and claimant then manipulated a handle or lever for the purpose of forcing the spokes into the holes of the felloe, or rim. When the spokes were in proper position following this manipulation, claimant was required to step on a pedal which resulted in the rim being forced upon the spokes. The pedal was about 4 inches from the floor when in a raised position. At about 3 o'clock in the afternoon of February 19, 1946, while in the act of pulling the lever, he felt a keen pain in his side. He examined himself and found there was a knot in his groin. He continued to work until quitting time at 5 o'clock, and when he reached home found that the knot had increased in size. His physician, R. W. Connor, examined him that evening, and told him that he had a hernia and that an operation would be necessary. Because of a cold and a heart condition, he was not operated on until March 15, 1946. Dr. Connor performed the operation. He was in the hospital about ten days, and was confined to his home for about three weeks thereafter. He testified positively that he had never had any pain in his side, any protrusion, or any symptoms of a hernia before February 19, 1946, and had never complained of a pain in his side. Dr. R. W. Connor who was introduced as a witness by the claimant, testified that he examined claimant on the night of February 19, 1946, and discovered that he had a right direct inguinal hernia which was irreducible, and he advised surgery. In his opinion it was a congenital type of hernia which finally developed into a scrotal hernia. He said the claimant told him he had had a slight hernia for a number of years. When the claimant, Adams, reported his injury to the Company on the morning of February 20, 1946, he was sent to Dr. W. B. Negley, the Company physician. Dr. Negley testified that on that occasion Adams told him, as a part of the history of his case, that he had had some trouble with the hernia for three or four months. A written statement signed by Adams and his wife was introduced. The statement was dated February 27, 1946, and was procured by Miss Mary Dalton, an adjuster for appellant's insurance carrier. She wrote the statement which was signed by Mr. and Mrs. Adams. In

the statement Adams said, among other things, that he had had a soreness in his right groin for three or four months, and that he was never conscious of hurting himself at any particular time. He denied making these particular statements to Miss Dalton, although he admitted the statement was read to him before he signed it.

In view of claimant's positive statement in his testimony that he had never had any pain in his groin and that there was no knot or protrusion prior to February 19, 1946, it cannot be said the Board's finding that the hernia did not exist in any degree prior to that date is not supported by evidence of substance and probative value. Claimant's credibility was a question for the Board's consideration and determination. The fact that he was predisposed to such infirmity does not render the Compensation Act inapplicable where the protrusion occurred suddenly and immediately after a strain to which he was subjected. Black Mountain Corporation v. Dean, 275 Ky. 121, 120, S.W.2d 1030; Hay v. Swiss Oil Co., 249 Ky. 165, 60 S.W.2d 385. This court had occasion to construe clause (c) of KRS 342.025 as it then read in American Rolling Mill Company v. Leslie, 302 Ky. 601, 194 S.W.2d 643, 644. In the course of the opinion it was said: "We are quite sure that it was never intended that clause (c) of KRS 342.025 above quoted, concerning a pre-existing degree of hernia, should be given such a narrow and extreme meaning as to embrace a congenital weakness, otherwise a mere pre-disposition would bar compensation and this would practically deny it altogether. We think the provision means that there must have been some definite provable pre-existing degree of hernia, which was merely brought into the open by the accident. This would be proof that the man was already ruptured. A potential hernia or a pre-disposition to such an infirmity or a certain lack of physical integrity or strength not amounting to a degree of hernia is not enough to deny compensation. Physical weakness is not an ailment or degree of disability; it may be normal. In the absence of a disturbance of some sort a man goes through life without experiencing any inconvenience from a congenital or the apparently common condition described. Without the accident in this case, there would have been no disability."

There was sufficient evidence to sustain the Board's

finding that appellee, Adams, had suffered a compensable hernia, but we are of opinion that the Board erred in finding that he was totally disabled up to the time the award was made. As was said by the Board in its opinion, it is a matter of common knowledge that disability usually does not continue permanently where the hernia has been reduced by an operation. KRS 342.-025 contemplates that disability may continue, and provides for compensation for the actual disability following the operation. Dr. Connor testified that the operation was successful and resulted in reducing the hernia. The only evidence as to any disability after the operation is claimant's statement that he is unable to work. He was asked, "In what way are you disabled now," and he answered, "When I pick up anything I have a hurting in my stomach." He said the pain was not in the same location as was the pain when he had the hernia. His physician testified that he was suffering from a serious heart condition. There is no evidence that his disability, if any, at the time he testified resulted from the hernia, and it follows that the Board erred in finding that the disability had been total after a reasonable period for recuperation following the operation.

Appellant complains because the Board appointed Dr. Harrison to examine the employee and make a report to the Board without giving appellant the right to take the physician's deposition. The order of the Board directed that the report of the physician should be presented in proper and admissible form. We assume from this that it was the Board's intention that either party was to have the right to take the physician's deposition as contemplated by KRS 342.315. Upon return of the case the parties, if they so desire, may take proof as to claimant's disability subsequent to the operation.

The appellee, Adams, prayed for and was granted a cross-appeal. Appellant moved to dismiss the cross-appeal, and the motion was passed to the merits. After entry of the judgment appealed from herein, the appellee filed in the circuit court a certified copy of the award of the Workmen's Compensation Board and moved the court to render judgment in accordance with the award. Apparently the motion was made pursuant to KRS 342.305. The court overruled the motion, and it is

from this order of the circuit court that appellee attempts to cross-appeal. The order is no part of the judgment from which the present appeal is prosecuted, and cannot be made the basis for a cross-appeal. Furthermore, the procedure outlined in KRS 342.305 is permissible only where the award of the Board has become final. Stearns Coal & Lumber Co. v. Duncan, 271 Ky. 800, 113 S.W.2d 436. The motion to dismiss the cross-appeal is sustained.

The judgment is reversed with directions to remand the case to the Workmen's Compensation Board for further proceedings.